McKinney, J.,
delivered the opinion of the Court.
This is an action against the plaintiffs in error, upon their official bond, as sureties of L. E. Temple, a constable of Davidson county, commenced in the circuit court of said county, on the 6th day of May, 1851.
The facts material to be noticed, are these: On the 4th day of July, 1850, the defendant in error sued out an attachment against one John G. Jones, an absconding debtor, returnable before a justice of the peace of said county. It appears that said attachment was placed in the hands of said Temple, who levied it on certain articles of furniture, and made return of the same to the justice on the same day of its issuance. The justice proves, that he gave judgment thereon, *209 in favor of Allen, “some few days afterwards,” but, that no execution ever issued on said judgmmt. He further proves, that on the same day, but prior to the issuance of Allen’s attachment, he issued another attachment against said Jones, in favor of William Woods, returnable to the circuit court, for $430. The witness, Greenfield, proyes, that he caused an attachment to issue against said Jones, which was levied by said Temple, on the same property, on the day after the levy of Woods’ and Allen’s attachments. This witness further proves, that Jones, the debtor, and said William Woods, “used the -same furniture ware-room” — that Temple “had told him that he had left these goods (the furniture attached) in the possession of Woods.” . In reply to the remark by witness, that he ought to take a bond of Woods, he said “no, he did not think there was any danger, and that Woods had given him storage for nothing.”
It is further proved by one of the deputy sheriffs, that on 15th of February, 1851, an execution on the judgment obtained on Greenfield’s attachment, was placed in his hands, and on that day he went to the ware-room of said Woods, and demanded of him the goods of Jones, which had been attached. Woods replied, that they were not there, that they had been sold by him. It is further proved, that Temple, the constable, died on the 15th day of January, 1851.
The defendants, on the trial of the cause, proposed to examine said Woods as a witness, but upon objection being made, the court held that he was incompetent to testify in the cause, on the ground of interest.
The court, among other things, instructed the jury: “That although no fi. fa. may have issued on Allen’s judgment, the constable had authority to sell the goods attached, after judgment.” The instruction of the court, in respect to the degree of diligence to which the constable was bound in safely keeping the property attached, though subject to criticism, we *210 deem it unnecessary to notice in the view we have taken of the case. We will confine ourselves to two questions. First. Was the witness Woods properly rejected? And, secondly. Is the plaintiff, upon the facts of this cause, entitled to a recovery against the sureties of Temple?
1. The incompetency of Woods is assumed upon the proof of Temple’s declaration to Greenfield — that the property attached was left, by Temple, in the possession and care of Woods, who thereby became agent, or bailee of the former. If this fact were established by any admissible evidence, the conclusion arrived at by the circuit judge would follow, inasmuch as the record of this suit might be admissible in an action over against him, not, indeed, to establish the facts found therein, but to show the amount of damages recovered. 1 Greepleaf’s Ev., sec. 394.
But the declarations of a principal are not, in general, evidence in an action against the surety upon his collateral undertaking, unless made, during the transaction, so as to become part of the res gestee. “The surety is considered as bound, only for the actual conduct of the principal, and not for whatever he might say he had done; and, therefore, is entitled to proof of his conduct by original evidence, when it can be had.” Ibid. § 187. If, then, the declarations proved, were not made at the time of the levy of Allen’s attachment, evidence of such declarations would not be admissible, and Woods, on that ground, could not be excluded as an incompetent witness.
2. The more important question is, can the present action be maintained? The proposition asserted in the charge of the court, is repeated in argument here, to the effect, that, by virtue of the levy of the attachment, the constable became vested with the property in the goods, so as that, after judgment, he might have proceeded to sell the same without exe *211 cution, or other process, and, consequently, that it was his duty to have done so, is wholly erroneous.
It is well settled, under our law, that an attachment is a proceeding in personam, and not in rem, as modified by recent enactments; its objects are to compel the appearance of the debtor and security for the debt. If the property be replevied, security must be given for the debt, or for the value of the property attached. If not, it remains in the custody of the law, for the satisfaction of the judgment to be obtained upon execution. The levy of an attachment does not divest the property of the debtor, it merely creates a specific lien upon the property attached. And if he die pending the suit, not having replevied, the property passes, subject to the lien, to his representatives, real or personal. 3 Humph. 139; 6 Humph., 151. The property attached cannot be sold until after a personal judgment against th@ debtor; Ibid. After judgment, the plaintiff has the right to sue out a writ of ven-ditioni exponas to sell the property held bound by the lien of the attachment; or, he may resort to the ordinary writ of fieri facias, and cause it to be levied on the property attached, or other property of the defendant, if to be found. But it has been held, that the election to take a writ of fi. fa., would be a waiver of the lien of the attachment. 2 Ten. R., 273.
It is equally well settled, that it forms no part of the official duty of an officer to take out process of execution after judgment. The law imposes upon him no such obligation. He may, it is true, by agreement with the plaintiff, take upon himself an obligation to do so, for the neglect of which he might be liable. But such liability is merely personal, resulting from his voluntary engagement to perform a duty, not enforced upon him by law, and would not extend to his sureties, whose undertaking is only for the performance of his official duties and obligations.
It was the duty of the plaintiff, in the present case, to have *212 taken out process upon his judgment; and he was bound to use reasonable diligence in doing so, in order to preserve the lien acquired by the attachment, which, like other liens, may be abandoned, or lost by negligence.
He could not, as against other creditors, delay for an unreasonable length of time to subject the property attached to the satisfaction of his judgment. Nor could he, even as against the officer, require that the latter shouId.continue liable for the forthcoming of the property attached, at his pleasure; much less could he do so, as against the sureties of the officer, who, when sought to be charged for the default of the principal, have the right to avail themselves of any matter of defence resulting from.the want of proper vigilance on the part of the plaintiff himself.
When, or hoW, the property attached in this case was disposed of, does not certainly appear. There is no evidence in this record, that it" was not forthcoming, from the time of the levy, until the death of the constable — some six months after-wards. The first we hear of the property being placed beyond the reach of the plaintiff, is the declaration of Woods to the deputy sheriff — but this was a month after the death of Temple. The plaintiff’s judgment was obtained early in July, 1850, and the constable died some six months after-wards. How can it be assumed that, if execution had been taken out two days after judgment, as might have been done, or within any reasonable time, the property attached might not have been subjected to the satisfaction of the plaintiff’s judgment? Certainly the law warrants no contrary conclusion, upon the facts of this case.
But, this is a matter about which we need not speculate, and upon which we lay no great stress. We place the decision of the case upon the principle, that the negligence of the plaintiff to follow up his lien, by, causing process to issue to *213 subject the property attached to the satisfaction of his judgment, must be treated as an abandonment of the lien.
In this view, it is clear the present action cannot be maintained.
Judgment reversed.