## MARY J. ROLL v. ADAM REA.

1. A *bona fide* purchaser of land for valuable consideration, not having notice of a prior deed which is unrecorded, may convey to one who has notice thereof as good a title as he himself holds.

2. One claiming title to land by a deed to him purporting to be made for a valuable consideration, is presumed to be a *bona fide* purchaser for value, without notice of prior unrecorded deeds, till the contrary is shown.

3. Notice by possession of lands never extends beyond the rights of the occupant and of those under whom he claims to hold.

4. One claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pursue.

5. Parties dealing in real estate may always lawfully assume that the title is completely disclosed upon the records, unless there is some circumstance of which they are bound to take notice, which should apprise a reasonable man, not merely that the records may be defective, but that they actually are so in the particular case in hand.

6. The proof of search for a lost deed made in this case justified secondary evidence of the contents of the deed.

7. Under the testimony in this case, the question whether a certain deed had been delivered was one of fact for the jury.

In ejectment. . On rule to show cause why a verdict for defendant should not be set aside, certified to this court by the Middlesex Circuit.

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *W. Strong* and *A. H. Strong.*

For the defendant, *A. V. Schenck.*

The opinion of the court was delivered by

DIXON, J. This is an action of ejectment brought July 12th, 1884, in the Middlesex Circuit Court, to recover possession of lots 10 and 11 in block 39, on a map made by John Perrine, Jr., in June, 1835, of lands in South Amboy. The lands laid down upon the map comprise three tracts, which were formerly known as the Gordon Ferry tract, the Swan Hill tract and the Lewis Hansell tract. The plaintiff proved that the title to these tracts had become vested in fee in Alexander J. Cotheal and James P. Thomas, under several deeds of dates running from September 1st, 1834, to May 6th, 1835, by virtue of which said Cotheal and Thomas were trustees of Henry and David Cotheal, George C. Thomas, George W. Pine, John E. Van Antwerp and Samuel Gordon, Sr., to sell and convey said lands and divide the proceeds among the *cestuis que trust* in certain designated proportions. She further proved that before 1874 the trustee James P. Thomas was dead, and that by deed dated April 16th, 1874, the other trustee, Alexander J. Cotheal, in consideration of $2500, bargained, sold, remised, released and quitclaimed unto herself and Sarah E. Dey, their heirs and assigns, all his right, title and interest, in law and equity, in the beforementioned tracts, the deed containing the following: " The

aforesaid described premises being the same premises surveyed by John Perrine, Jr., June, A. D. 1835, and the map of the same filed in the clerk's office of the county of Middlesex aforesaid, entitled a map of property in the town of South Amboy, Middlesex county, New Jersey. It is agreed by and between the parties to these presents that this indenture shall not conflict with the title to any part of the aforesaid premises previously sold and conveyed by the said Alexander J. Cotheal and James P. Thomas to any party or parties, and this deed is subject to any such conveyances. And all the parks, streets and avenues as laid out on the aforesaid map are hereby excepted from the deed and are not quitclaimed or in any manner conveyed by these presents."

The plaintiff also proved that in June, 1876, a decree was rendered by the Court of Chancery against Sarah E. Dey and her husband at the suit of the Mutual Building and Loan Association of South Amboy, for a deficiency existing upon foreclosure of a mortgage; that a *fi. fa.* was issued June 27th, 1876, to the sheriff of Middlesex county to raise the amount of such decree by sale of the defendants' goods and lands; that by virtue of the *fi. fa.* said sheriff levied upon and duly sold the interest of the defendant Sarah E. Dey in block 39 on said Perrine map, and duly conveyed the same to James H. Wallace by deed dated April 11th, 1877, and that by deed dated May 28th, 1884, said Wallace conveyed the same to the plaintiff.

The foregoing conveyances, having been all duly recorded, constituted the plaintiff's title.

The defendant contended that by a deed dated June 17th, 1835, the trustees, Cotheal and Thomas, had sold and conveyed block 39 on said map to John Lary, and that although this deed had never been recorded, yet the plaintiff had notice of it before she took the conveyance of April 16th, 1874, and hence was bound by it, and while the defendant did not claim title under Lary, he insisted that Lary's title defeated the plaintiff's right of possession.

The Circuit Court upheld this contention, and directed the

jury to render a verdict for the defendant, and thereupon allowed the plaintiff a rule to show cause why the verdict should not be set aside and certified the same to this court for its advisory opinion.

Conceding all the claims upon which the Circuit Court acted, there still arises the question whether the notice of the Lary deed, which the plaintiff received before the conveyance by the trustee to herself and Sarah E. Dey, would interfere with the claim which she makes as grantee of John H. Wallace.

This question is answered by the rule, which is perhaps universally recognized where registry laws prevail, that a *bona, fide* purchaser of land for valuable consideration, not having notice of a prior deed which is unrecorded, may convey to one who has·notice thereof as good a title as he himself holds. *Holmes* v. *Stout*, 3 *Green Ch.* 492 ; *S. C. on appeal*, 2 *Stockt.* 419 ; 2 *Pom. Eq.*, § 754.

It becomes necessary, therefore, to consider whether Wallace was a *bona fide* purchaser for value, without notice of the Lary title.

The deed to Wallace purports to have been made for a valuable consideration, and there is no evidence that he acted in bad faith. Hence he is to be treated as a *bona fide* purchaser for value until the contrary be shown. *Holmes* v. *Stout*, 2 *Stockt.* 419. As to notice, also, the burden of proof rests upon the defendant who alleges it. *Coleman* v. *Barklew*, 3 *Dutcher* 357.

It does not appear that Wallace had any notice of the Lary title, unless such notice is to be gathered from the fact that the defendant had open and visible possession of the premises at the time Wallace purchased,· or from the chain of title under which he claimed.

The defendant's possession was undoubtedly of a character to constitute notice ; he was living upon the property in dispute. He had purchased the property from John E. Montgomery, who had delivered to him a deed for the same, dated June 17th, 1881, purporting to convey a fee simple, which

·deed was duly recorded on June 20th, 1881.   Montgomery's
·title was also spread upon the record, and according to the
record had begun in a tax sale of said block 39, made by Wil-
liam W. Seward, constable, in pursuance of a warrant from the
·township committee of South Amboy, directing him to sell
·said block as the property of certain non-residents of the state,
for the taxes of 1854.   At such sale Abraham Everitt had
bought the block for the term of twenty-eight years from
·June 28th, 1856, and had received from the constable a deed
·conveying the same to him for said term.   From Everitt the
·title had been transmitted through several transferrees to the
·defendant, all the deeds being in form to convey a fee simple
·and being regularly recorded.   Of the title so held by the de-
·fendant all persons must, beyond controversy, be deemed to
·have notice.   But there does not appear, in this title, any
·trace of the title of John Lary, nor did the defendant ever·
·pretend to hold under him.   Notice by possession never ex-
·tends beyond the rights of the occupant and of those under
·whom he claims to hold.   2 *Pom. Eq.*, §§ 614–625.   Wallace
·therefore cannot be charged with notice of the Lary title be-
·cause of the defendant's possession.

Wallace is undoubtedly chargeable with notice of every
matter affecting the estate which appears on the face of any
·deed forming an essential link in the chain of instruments
·through which he derived his title, and also with notice of
·whatever matters he would have learned by any inquiry which
the recitals in these instruments made it his duty to pursue.
2 *Pom. Eq.*, § 625; *Van Doren* v. *Robinson*, 1 *C. E. Green*
·256; *Wallace* v. *Silsby*, 13 *Vroom* 1.

The facts relevant to our present purpose, which are dis-
·closed by these instruments, are that about 1835 Cotheal and
·Thomas had become seized of all the lands laid down on the
·Perrine map, in trust to sell and convey the same; that be-
·fore 1874 they had sold and conveyed some portions of these
lands, and that in 1874 a residue was still vested in Cotheal,
·the surviving trustee, which was then conveyed by him to the
plaintiff and Sarah E. Dey.

Roll v. Rea.

Among these facts there is no direct reference to the Lary title, but it is clear that the statement in the deed to the plaintiff and Mrs. Dey, that some portions of the property had previously been sold and conveyed by the trustees, devolved upon every person meaning to take title under that deed the duty of making some inquiry as to what portions had been so sold and conveyed. But the important question here is, What inquiry was Wallace, intending to purchase the estate of Mrs. Dey, bound to make? Was he bound to inquire of Mrs. Dey and not beyond, or was he bound to inquire of Cotheal, the trustee, or was he entitled to rely upon the records alone? An inquiry from Mrs. Dey would probably not have disclosed the Lary deed, for she and the plaintiff were claiming that Lary had no title; an inquiry from Cotheal probably would have disclosed it, for he seems always to have asserted Lary's ownership; an examination of the records would not have disclosed it, but would have disclosed conveyances enough to justify the statements in Cotheal's deed.

My judgment is that Wallace was entitled to rely upon the records. Being informed that out of a large tract of land held for sale in parcels some parcels had been conveyed to purchasers, but having no intimation that any of these purchasers had failed to record their deeds, he was warranted in assuming that they had observed this statutory duty for the protection of their interests. I can see no substantial reason for holding the contrary. The fact that Cotheal's deed to the plaintiff and Mrs. Dey did not define the residue which it conveyed might have suggested to some minds an inquiry from Cotheal as to what had previously been sold, but I think such a suggestion would have been reasonably answered by the presumption that the records afforded all needed information. If the Cotheal deed had described particular lots, no doubt purchasers could have relied implicitly upon the records for their title; that it used only general terms, purporting to convey all that Cotheal owned, seems to me too insignificant a circumstance to justify the enforcement of a different obligation against purchasers. Parties dealing with real estate may al-

ways lawfully assume that the title is completely disclosed on the records, unless there is some circumstance of which they are bound to take notice, which would apprise a reasonable man, not merely that the records may be defective, for that is always possible, but that they actually are so in the particular case in hand. There is no such circumstance here, and Wallace therefore took title as a *bona fide* purchaser for a valuable consideration, without notice of the Lary deed, and as to him and those claiming under him that deed is, by our statute, void and of no effect. Hence, to an undivided half of the property in dispute, derived from Mrs. Dey through Wallace, the plaintiff's title was good, and the verdict for the defendant is wrong.

But the plaintiff further contends, first, that there was no competent evidence at all of the Lary deed, and secondly, that the question whether such a deed had been delivered to Lary should have been submitted to the jury.

The Lary deed was proved only by secondary evidence, and the plaintiff's claim is that proper foundation was not laid for the admission of such testimony.

The grounds upon which secondary evidence of the contents of a paper said to be lost is admissible are fully stated in *Johnson* v. *Arnwine*, 13 *Vroom* 451. The circumstances of the present case come within the principles there laid down. The testimony showed that in 1835 the deed had been placed in the custody of H. & D. Cotheal, a firm, of which the only surviving member was Alexander J. Cotheal; that it was not now in the possession of Alexander J. Cotheal, and that he believed it had been delivered, in 1835, to John Lary, since which time he had not seen it; that John Lary had been a resident of New York, but was now dead; that his only descendants living in New Jersey were two ladies, his grandchildren, who, on inquiry, said they knew nothing of the deed; and that a witness interested in the discovery of the deed had been unable to find any trace of it. In view of the facts that the deed was not one in which the defendant had any direct interest, and that there was no reason to suspect

that it was designedly withheld, we think that reasonable search was made, and that there was no impropriety in receiving secondary evidence of its contents.

With regard to the action of the Circuit, touching the delivery of the deed, the rule to be applied is that sanctioned by this court in *Jones* v. *Swayze*, 13 *Vroom* 279, 282, that primarily the delivery of a deed is a question of fact; that the court may instruct the jury to find the delivery when the whole testimony directly shows the delivery or shows such facts that therefrom the delivery is a positive or absolute inference of law; but that when there is any conflicting testimony, or when only such facts are shown that therefrom the delivery may be inferred, then the case should be left to the jury, with proper instructions.

The evidence establishes the following facts: that at an auction sale held in June, 1835, under the direction of the trustees, H. & D. Cotheal had purchased block 39; that John Lary had been allowed to take their purchase at $245; that the trustees had signed, sealed and acknowledged a deed, dated June 17th, 1835, to convey block 39 to John Lary for $245, and that Lary had made his note of the same date for the consideration money; that the deed and note had been placed in the custody of H. & D. Cotheal, the deed to be delivered to Lary on payment of the note; that in the accounts settled in October, 1835, between the trustees and H. & D. Cotheal, who were *cestuis que trust*, the Lary note had been credited to the trustees and charged against H. & D. Cotheal as cash; that Lary was a responsible man and a friend and neighbour of H. & D. Cotheal; that the sole surviving member of the firm of H. & D. Cotheal, Alexander J. Cotheal, who was also one of the trustees, has not possession of either the note or the deed, and has no recollection of them since the transactions just mentioned, nor can he recall any knowledge to the effect that the note was not paid in due course, but, on the contrary, he firmly believes that it was paid, and that the deed was delivered to Lary; that from 1835 until 1874, when the plaintiff took her conveyance, neither Lary, nor the trustees, nor

H. & D. Cotheal, nor any one representing any of them, made any claim upon or in any way interfered with block 39, and that no one representing Lary has done so since 1874.

These facts scarcely warranted the withdrawal of the question of delivery from the jury. They do not afford any direct evidence of delivery, and, taken as a whole, constitute the basis, not, I think, of a positive inference of delivery, but only of a probable inference touching that fact. Although there is much force in the contention that the non-possession by Alexander J. Cotheal of the note and the deed, the absence from his mind of any impression that the note was not paid, the failure of H. & D. Cotheal to set up any claim for a title to the land, and the character of John Lary, show the delivery of the deed, there is also some force in the opposing contention that the lapse of time and the dual position of Alexander J. Cotheal, as a trustee having the legal title, and as a member of the firm having the equitable claim, will account for some of these facts, while the failure of Lary and his heirs ever to perform the slightest act of ownership tends to show that the deed was not delivered. The case seems to be one of conflicting probabilities, and therefore to be decided by a jury.

The Circuit Court is advised to grant a new trial.