In the Matter of Charles ELIN, Debtor.

Margaret ELIN, Plaintiff,

v.

Michael G. BUSCHE, as Trustee in Bankruptcy of Charles Elin, Debtor, et al., Defendants.

Civ. A. No. 82–749.
Bankruptcy No. 81–02755.
Adv. No. 81–1298.

United States District Court,
D. New Jersey.

June 11, 1982.

Jerome C. Eisenberg, Frank Orbach, Clapp & Eisenberg, P. C., Newark, N. J., for plaintiff.

Michael G. Busche, Trustee, pro se.

## OPINION

DEBEVOISE, District Judge.

This is an appeal from a judgment of the Bankruptcy Court. The Court authorized the sale of certain residential real estate and determined that plaintiff, Margaret Elin, owned only an undivided one-half interest in the property as a tenant in common. Plaintiff urges that the Bankruptcy Court erred in holding that the provisions of 11 U.S.C. § 544(a) rendered ineffective the debtor's (plaintiff's husband's) attempt, in 1973, to transfer all of his interests in the property to her.

### The Facts

The facts are undisputed. In 1972 plaintiff and her husband, Charles Elin, now the debtor, separated after twenty-six years of marriage. After six weeks of separation the debtor, in consideration for plaintiff's return to him, agreed to convey to her all of his interest in their residence in South Orange, New Jersey. At the time they held the property as tenants by the entirety. The debtor directed his attorney to prepare a deed to effectuate his promise.

The attorney prepared a deed which was executed in March, 1973 and recorded on June 11, 1973. In the deed the debtor purported to transfer the premises (which were described by metes and bounds) to plaintiff. After the description there appeared the language: "The purpose of this deed is to relinquish the curtesy rights of the grantor pursuant to statute." At the time of delivery of the deed both plaintiff and her husband, as tenants by the entirety, stood to take the entire property in the event of the earlier death of the other. In such a form of tenancy the wife had no dower interest and the husband had no curtesy interest. Instead, each had a survivorship interest. Consequently the recital in the deed that its purpose was to relinquish the husband's curtesy rights made no sense. Both husband and wife intended that all of the husband's interests be conveyed to the wife, and the form of the deed was attributable to an attorney's error of which both parties to the deed were unaware. After delivery of the deed plaintiff began to receive the real estate tax bills addressed to her alone, and she commenced paying the taxes.

The reconciliation was short-lived and plaintiff instituted an action for divorce. On December 20, 1976, prior to the trial of the divorce action, plaintiff and the debtor entered into a property settlement agreement. The agreement provided, among other things:

4. In addition, the parties covenant and agree that *the Wife shall retain the property presently owned or held by her,* including, without limitation: *the residence at 325 Highland Road, South Orange* . . . .

5. In consideration of the division of real and personal property as more fully

set forth in paragraphs 1 through 4, inclusive, above, the parties hereby waive, release, and abandon any claims that either may have for a division of property (other than as expressly set forth herein), held jointly or by the other, pursuant to the present or future laws of the State of New Jersey or any other state of the United States.

(Emphasis added.)

The January 6, 1977 divorce decree terminating plaintiff's and the debtor's marriage referred to the agreement and, in effect, adopted its provisions in lieu of determining the issues of equitable distribution and alimony.

In May, 1981 the debtor filed a voluntary petition in bankruptcy. He did not list the South Orange residence as one of his assets, believing that he had conveyed it to his wife in 1973 and had no further interest in it.

At about the same time plaintiff decided to sell the property. When the purchaser conducted a title examination the record disclosed title in plaintiff and debtor as tenants by the entirety, with the 1973 deed purporting to convey the debtor's non-existent curtesy rights. The purchaser, confronted with this cloud on title, refused to complete the transaction.

To cure the title defect plaintiff filed a complaint in the pending bankruptcy proceeding. The complaint recited the above facts, identified certain creditors who had obtained and docketed judgments against the debtor after the recording of the deed, and sought a judgment reforming the deed and directing the trustee to execute and deliver to plaintiff a corrective deed. The Bankruptcy Court conducted a hearing at which the United States Trustee opposed the relief plaintiff sought and urged the sale of the property free and clear of the debtor's and his creditors' interests.

The Bankruptcy Court held that the Trustee can defeat plaintiff's attempted reformation of the deed under 11 U.S.C. § 544(a)(3), which provides that "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by—... (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists." The Bankruptcy Court found that the original transfer of the property was made to plaintiff and the debtor as tenants by the entirety, that the 1973 deed from the debtor to plaintiff transferred only the debtor's curtesy interests, and that neither the deed, the unexpressed intent of the parties, nor the divorce decree established notice to a bona fide purchaser that there was a transfer of the debtor's interest to plaintiff's sole ownership. The Court stated, "The only way title could have been changed to defeat the interests of a bona fide purchaser is to record the deed with the County Records Office." (Transcript of Dec. 9, 1981, p. 29) (*citing* N.J.S.A. 46:22–1).

The Bankruptcy Court concluded that the Trustee succeeded to the debtor's one-half interest in the property he held as a tenant by the entirety with his wife, which, upon their divorce, was converted to a tenancy in common. A judgment was entered authorizing a sale of the real estate free and clear of liens and determining that plaintiff was entitled to only a one-half interest in the proceeds. After the filing and withdrawal of a motion for reconsideration, plaintiff filed a notice of appeal to this Court.

The appeal raises two issues. First: 11 U.S.C. § 541(d) provides that "[p]roperty in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold". In the light of § 541(d), did the Bankruptcy Court err in holding that plaintiff's equitable interest in the South

Orange real estate, which existed by reason of the 1973 transaction, became part of the estate? Second: If § 541(d) does not prevent plaintiff's interest in the South Orange real estate from becoming a part of the estate, did the Bankruptcy Court correctly apply 11 U.S.C. § 544(a) when he avoided the 1973 transfer to plaintiff of the debtor's interest in the South Orange real estate?

■ These are questions of law and are reviewable by this Court. *Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98 (3d Cir. 1981).

■ Plaintiff contends that under 11 U.S.C. § 541, which defines the bankruptcy estate, the estate does not include the one-half interest in the South Orange real estate which the Bankruptcy Court awarded to the Trustee. This is so, plaintiff urges, because the debtor held the property under a constructive trust in favor of plaintiff.

The provisions of § 541 upon which plaintiff relies read:

(a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

.    .    .    .    .

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

It is apparent, as plaintiff urges, that in the present case under New Jersey law were the debtor not in bankruptcy he would be deemed to hold his interest in the property subject to a constructive trust in favor of plaintiff. Plaintiff would be entitled, in the circumstances of this case, to a decree reforming the 1973 deed so that it would accomplish the intent of the parties to it.

New Jersey courts have recognized the availability of the constructive trust as a means of redressing inequitable results of mistakes in attempts to convey property. *See D'Ippolito v. Castoro*, 51 N.J. 584, 588–89, 242 A.2d 617 (1968); *In re Hoffman*, 63 N.J. 69, 81, 304 A.2d 721 (1973). Although courts ordinarily employ a constructive trust where there has been a transfer based on fraud or mistake, this device is also available where a purported conveyance based on consideration turns out to be ineffective to transfer the property. *See Annotation*, 12 A.L.R.2d 961 (1950). At least one New Jersey court has impressed a constructive trust upon real property where, despite the parties' agreement to convey, the deed was invalid and thereby failed to convey the property. *Voorhis v. Courter*, 100 N.J.Eq. 65, 135 A. 145 (Ch. 1926).

New Jersey courts have also recognized the existence of a right to reformation in appropriate circumstances. As the Court stated in *Scult v. Bergen Valley Builders, Inc.*, 76 N.J.Super. 124, 130, 183 A.2d 865 (Ch.Div.1962), aff'd on other grounds, 82 N.J.Super. 378, 197 A.2d 704 (App.Div. 1964):

Absent the existence of innocent third parties whose rights may be adversely affected by a scrivener's mistake, ' "[w]here an instrument is drawn and executed, which professes, or is intended, to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violate the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement." '

The Court pointed out that reformation of a mortgage would not be available against innocent third parties *who had no notice* and also were not chargeable with notice of

the original mistake. *Id.* at 131–132, 183 A.2d 865. In *Schnakenberg v. Gibraltar Savings and Loan Ass'n,* 37 N.J.Super. 150, 117 A.2d 191 (App.Div.1955), the plaintiff sought reformation of a lease. The Court stated:

> Reformation does not lie against a subsequent bona fide purchaser *without notice.* But ... *where the purchaser is chargeable with constructive notice,* any right of reformation ... for fraud or mistake which the tenant has against the landlord may ... be enforced against the purchaser.
>
> (*Id.* at 158, 117 A.2d 191.) (Citations omitted.) (Emphasis added.)

Plaintiff urges that inasmuch as she holds the equitable interests in the South Orange real estate and the debtor holds only legal title, § 541(d) compels the conclusion that the real estate never became a part of the debtor's estate. *In the Matter of Abbott,* 11 B.R. 583 (Bkrtcy.W.D.Pa.1981); *In re Angus,* 9 B.R. 769 (Bkrtcy.D.Or.1981); 4 *Collier on Bankruptcy,* ¶ 541.01, at 541–6 to 541–7; *see also* ¶ 541.13 (15th Ed. 1981). Since the real estate was never a part of the debtor's estate, plaintiff further urges, it was never subject to the provisions of § 544(a)(3), upon which the Bankruptcy Court relied to award the debtor's half of the real estate to the Trustee.

The fallacy of plaintiff's position lies in a misreading of § 541. Three sections of the Act must be read together—§ 541, § 551 and § 544. Granted that the bare language of these sections may appear to be elliptical, the meaning which emerges is that assets recoverable by a trustee pursuant to § 544 become property of the estate notwithstanding the provisions of § 541(d). In other words, if a person other than the debtor holds an equitable interest in assets subject to recovery under § 544, the provisions of § 541(d) upon which plaintiff relies do not prevent the trustee from recovering those assets.

Section 541(a)(4) provides that an estate is comprised of "[a]ny interest in property preserved for the benefit of or ordered transferred to the estate under section ...

551". § 551 provides that "[a]ny transfer avoided under section ... 544 ... is preserved for the benefit of the estate but only with respect to property of the estate". Thus, § 541, and § 551 which is incorporated therein by reference, bring within the debtor's estate property recoverable pursuant to § 544.

Although the House and Senate reports on the Act do not appear to have addressed this precise issue, the Commission on the Bankruptcy Laws of the United States did. In Section C of Part I of its report, under the heading "General Recommendations", the Commission wrote:

> In addition to property owned by the debtor at the date of the petition [in bankruptcy], the property of the estate would include (a) recoveries under the avoidance sections of the proposed Act ....
>
> [*Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc.No. 93–137, 93d Cong., 1st Sess., Part I, p. 192 (1973) (reprinted in *Collier on Bankruptcy,* Appendix 2 (15th Ed. 1980)).]

Part II of the *Commission Report* included proposed statutory provisions accompanied by explanatory notes. Proposed § 4–601, identifying "Property of the Estate"—obviously the model for § 541—included as property of the estate all "*property recovered pursuant to* [proposed] sections 4–603 to 6–608 inclusive and *[proposed] section 4–610*". Comment Two to proposed § 4–601 states that "[p]roperty of the estate [includes] ... property recovered under the 'avoiding powers' of ... § 4–610". Finally, proposed section 4–610 provided:

> *Preservation of Voidable Transfer.* Whenever any transfer is voidable by the trustee, the court may determine on complaint filed by the trustee after hearing on notice to persons claiming an interest in the property subject to the transfer, whether the transfer shall be avoided or shall be preserved for the benefit of the estate.

Congress ultimately chose to make such preservation "automatic" upon exercise of

the trustee's powers, and, as a result, any property made subject to those powers is included in the estate by virtue of § 541(a)(4).

The authors of a recent treatise on the new Act concur in this result. Weintraub and Resnick, in *Bankruptcy Law Manual* (Warren, Gorham & Lamont 1980), write:

¶ *4.03 Property Included in the Estate*

\* \* \* \* \* \*

■ *Property Recovered Pursuant to the Trustee's Powers*

The Bankruptcy [Reform Act] gives the trustee certain powers to recover property for the estate. These powers often give the trustee *greater* rights than the debtor has on the date the petition is filed. The trustee has powers to recover property in the hands of an assignee for the benefit of creditors, a receiver, or other custodian [citing 11 U.S.C. § 543]. The trustee has the power to avoid preferential transfers [§ 547] and fraudulent conveyances [§ 548] made prior to bankruptcy. In addition, certain security interests, mortgages, and statutory and judicial liens may be avoided by the trustee despite the validity of these interests as against the debtor [§ 544] . . . .

Accordingly, the [Act] provides that *any property reached by the trustee pursuant to these or other powers becomes part of the estate* [§§ 541(a)(3), 541(a)(4)].

(*Id.* at pp. 4–11.) (Latter emphasis added.)

■ These commentators support the conclusion that in those situations where § 544(a)(3) permits him to do so a trustee is not barred from asserting his bona fide purchaser status over property which might otherwise be excluded from the bankrupt's estate by the provisions of § 541.

Having rejected plaintiff's attempted end-run around the Bankruptcy Court's application of § 544(a)(3), it is still necessary to determine whether that section was applied properly in this case. It provides, in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\* \* \* \* \* \*

(3) a bona fide purchaser of real property from the debtor, *against whom applicable law permits such transfer to be perfected*, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(Emphasis added.)

■ This language is not completely clear, at least to me. However, with the assistance of the available legislative history and recent decisions on the subject, I conclude that it is to be construed as follows: If a debtor had effected a transfer of real estate to a transferee, and if under applicable *state* law a subsequent bona fide purchaser of the real estate would prevail over the transferee, then the trustee may avoid the transfer and claim the real estate as part of the debtor's estate.

Under this interpretation of § 544(a)(3), a trustee may avoid a transferee's interest whenever applicable state law would permit a bona fide purchaser to do so. Conversely, when, under applicable state law, a transferee's interest is sufficiently perfected so that it could not be divested by a subsequent bona fide purchaser, a trustee may *not* avoid the transfer, and the transferred property could not be brought into the estate. If this interpretation be correct the issue in this case is whether, under New Jersey law, the 1973 transfer of the South Orange real estate to plaintiff could be divested by the debtor's subsequent transfer of the real estate to a bona fide purchaser.

The legislative history of § 544(a)(3) is scant and sheds little light on the proper interpretation of this new strong-arm provision.

A few commentators, however, have discussed the trustee's new status under § 544(a)(3). One of them observes that the major impact of this provision will be to strengthen the trustee's position in those states where the recording statutes do not protect judgment creditors. *See* Rendleman, *Liquidation in Bankruptcy Under the 1978 Code*, 21 Wm. & Mary L.Rev. 575, 612 (1980). Two others agree, and view § 544(a)(3) as a potential *"coupe de grace* in bankruptcy proceedings". Teofan & Creel, *The Trustee's Avoiding Powers Under the Bankruptcy Act and the New Code: A Comparative Analysis*, 85 Comm.L.J. 542, 545 (1980). These latter two authors suggest the following analysis of § 544(a)(3):

> The extent of the rights, remedies and powers of the trustee as such a bona fide purchaser are again measured by the substantive law of the state in which the real property is situated. Therefore, where the trustee seeks to avoid unrecorded or undisclosed interests in real property [under § 544(a)(3)] ... two issues are presented: (1) under the applicable state law, are the rights of such a bona fide purchaser superior to the rights of the interest holder, and (2) under applicable state law, can the transfer sought to be avoided be perfected against a bona fide purchaser?

*(Id.)* (Footnote omitted.)

Another leading treatise on bankruptcy law, *Collier on Bankruptcy*, has not yet delivered on its promised discussion of the trustee's status as bona fide purchaser, *see* 4 *Collier on Bankruptcy*, ¶ 544.02 (15th Ed. 1980), at 544–7, but does discuss § 544(a) generally.

> [S]ection 544(a) confers upon the trustee a status with the consequent status and capacity to act to invalidate transfer, just as if he were in actuality [a] bona fide purchaser of real property from the debtor .... Wherever under the applicable law such a ... bona fide purchaser might prevail over prior transfers ... the trustee will also prevail.

(4 *Collier on Bankruptcy*, ¶ 544.01 (15th Ed. 1980), at 544–3.)

> [The trustee's] hypothetical status [as bona fide purchaser] depends for meaning upon a substantive law that is not explicitly indicated but that is incorporated by reference. Therefore, the trustee's powers, in every case governed by 544(a), are those which the state law would allow to a [bona fide purchaser] as of the commencement of the case.

*(Id.* at 544–5.) (Footnotes omitted.)

Finally, the authors of the *Bankruptcy Law Manual, supra,* state simply that, "any transfer of real estate by the debtor that is not perfected as against bona fide purchasers prior to bankruptcy may not be effective as against the trustee". *Bankruptcy Law Manual, supra,* at ¶ 7.02, p. 7–5.

This interpretation—permitting state law to define the limits of the trustee's status as bona fide purchaser—is consistent with what appears to have been the purpose of § 544(a)(3). Prior to the Act, the trustee had the status of a judicial lien creditor as to real property.

> [H]owever, a judicial lien creditor may not always defeat an unrecorded real estate mortgage because real property recording acts in some states were designed to protect [only] bona fide purchasers—not judicial lien creditors .... By granting the trustee the additional rights of a bona fide purchaser of real estate, mortgages that are unrecorded on the day of bankruptcy may be avoided under the [Act] even in those states that give the unrecorded mortgage priority over judicial lien creditors.

*(Id.* at ¶ 7.02, p. 7–5.)

The trustee in the present case argues that under § 544(a)(3) he has a "superpriority" which does not depend on the status of a bona fide purchaser under state law but, instead, grants him automatic bona fide purchaser without notice status as a matter of federal law. Such a position would certainly enhance the trustee's ability to preserve property for the benefit of unsecured creditors. However, the authorities cited above are persuasive and lead me to conclude that Congress, in enacting § 544(a)(3), did not intend to transform the

trustee into a "super-priority" creditor, *see* Hogan, *Bankruptcy Reform and Delayed Filing Under the U.C.C.*, 35 Ark.L.Rev. 35, 43–44 (1981), but instead sought to alleviate state-to-state discrepancies in the trustee's avoiding powers which resulted from differing state recording statutes. Thus, I conclude that the trustee's rights as against a prior transferee of the debtor's real property must be measured under the applicable state law. The trustee may take only if under New Jersey law a bona fide purchaser of the South Orange real estate would have prevailed over plaintiff as of the date of filing in bankruptcy. *Cf. Himmelstein v. Ewing Bank & Trust Company*, 5 B.C.D. 288 (D.N.J.1979).[1]

As I interpret the bench opinion of the Bankruptcy Court in this case, it too did not accept the trustee's position that § 544(a)(3) confers upon the trustee a "super-priority" which overrides state law. Rather, the Bankruptcy Court sought to apply New Jersey law to determine if a bona fide purchaser of plaintiff's interest would have a right superior to plaintiff's. Ruling that a bona fide purchaser would prevail, the Bankruptcy Court held that "[t]he only way title could have been changed to defeat the interests of a bona fide purchaser is to record the deed with the County Records Office". That, I believe, is an incorrect statement of New Jersey law. There are situations where a transferee of real property will prevail over a subsequent purchaser for value even though a proper deed had not been recorded.

New Jersey's recording statute, N.J.S.A. 46:22–1, provides in relevant part:

> Every deed or instrument ... shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate ...

is situate, be void and of no effect against ... all subsequent bona fide purchasers ... for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded ... but any such deed or instrument shall be valid and operative, although not recorded, except as against such ... purchasers.

■ New Jersey courts have not limited the concept of "notice" under the recording statute to "actual notice" in the record. Rather, under New Jersey decisions,

> A purchaser is "chargeable with notice of every matter affecting the estate, which appears on the face of any deed forming an essential link in the chain of title; and also notice of whatever matters he would have learned by any inquiry which the recitals in these instruments made it his duty to pursue." *Roll v. Rea*, 50 N.J.L. 264, 268 [12 A. 905] (Sup.Ct. 1888), [*aff'd on other grounds*, 57 N.J.L. 647 (32 A. 214) (E&A 1895)].
>
> *Camp Clearwater, Inc. v. Plock*, 52 N.J. Super. 583, 598–99, 146 A.2d 527 (Ch.Div. 1958), *aff'd on other grounds*, 59 N.J.Super. 1, 157 A.2d 15 (App.Div.1959).

In *Scult v. Bergen Valley Builders, Inc.*, *supra*, a plaintiff sought to reform a mortgage. Defendants resisted on the ground that they were bona fide purchasers without notice of the plaintiff's pre-existing claim. Noting that New Jersey courts would not recognize a right of reformation as against subsequent bona fide purchasers without notice, the Court quoted a discussion of the concept of constructive notice:

> "Generally, actual notice on the part of the subsequent purchaser or encumbrancer of the error to be corrected is not necessary in order to permit reformation of the instrument as against him, provid-

---

1. After the argument of this appeal and just before the opinion was filed, the Third Circuit ruled upon this § 544(a) issue raised in the present case. *McCannon v. Marston*, —— F.2d ——, Docket No. 81–2490 (June 2, 1982). The Court rejected the bankruptcy and district courts' holding that the language contained in § 544(a)—"without regard to any knowledge of the trustee or of any creditor"—results in the trustee assuming the powers of a bona fide

purchaser without notice, whether or not the transferee has given the rest of the world actual or constructive notice by possession. The Court stated: "That the words 'without regard to any knowledge' were not meant by Congress to nullify all state law protections of holders of equitable interests is suggested both by the history of its inclusion in the statutory language and by other language within Section 544(a)(3)". (At p. ——)

**1020**

ed he had constructive notice, or the facts were such as to put him upon inquiry.

The record of an incorrect instrument does not constitute notice of such inaccuracy to a purchaser or encumbrancer, thereby depriving him of any right to protection as against reformation, unless the nature of the inaccuracy is such as to put him upon notice or require him to make inquiry with regard thereto . . . ." Annotation, 79 A.L.R.2d 1180, 1184 (1961).

76 N.J. at 132, 183 A.2d 865.

In *Garden of Mem., Inc. v. Forest Lawn Mem. Pk. Assn.*, 109 N.J.Super. 523, 264 A.2d 82 (App.Div.1970), *pet. for certif. den.*, 56 N.J. 476, 267 A.2d 58 (1970), the Court stated:

[I]t is unquestionably the duty of the purchaser to search the grantor and other pertinent recording indexes for each holder of record title for the period during which he held such title . . . .

\* \* \* \* \* \*

[A] record which affords record notice of the transfer therein made may contain a statement or recital which does not of itself give either record notice or actual notice but does place on inquiry one who is affected by the record. 4 *American Law of Property*, § 17.28, at 608–609 (1952). A purchaser who is placed on inquiry is chargeable with notice of such facts as might be ascertained by a reasonable inquiry.

*Id.*, at 533, 535, 264 A.2d 82 (citations omitted).

In that case, the Court concluded that plaintiffs there were given "constructive notice" of certain deeds affecting their title and that a reference in the chain of title to the other deeds was sufficient to require plaintiffs to inspect those deeds and investigate the information in them.

The question which ultimately must be addressed in the present case is whether a prospective purchaser from the debtor of a tenancy in common interest in the South Orange real estate would have "had 'clews' which were 'so easily followed that to have failed to do so charges [the prospective purchaser] with [his] own neglect'". *Garden of Mem., Inc., supra,* at 535, 264 A.2d 82, *quoting Kennedy v. Island Development Co.*, 9 N.J.Misc. 921, 924, 156 A. 233 (Atlantic County Ct.1931). If there were such "clews" a purchaser of a tenancy in common interest from the debtor could not have become a bona fide purchaser who would take as against plaintiff. It would follow, under those circumstances, that the trustee in bankruptcy could not avoid the transfer to plaintiff under § 544(a)(3).

A purchaser of the debtor's tenancy in common interest as of the date of the filing of the bankruptcy case would be confronted with the 1973 deed from the debtor to plaintiff. The deed on its face purports to transfer a non-existent interest—the husband's curtesy interest in real estate held by the husband and wife as tenants by the entirety. Since any purchaser would know that it is highly unlikely that the parties to the deed intended to record an instrument having no effect, the deed constituted a "clew" which a purchaser would have an obligation to follow—to find out just what the parties to the deed were about when they executed and recorded it. An inquiry would have brought to light plaintiff's interest in the real estate. Thus, any purchaser of the debtor's tenancy in common interests would be charged with notice of plaintiff's ownership of all rights to the real estate.[2]

2. In view of my conclusion that the recording of the defective 1973 deed without more imposes upon a prospective purchaser a duty of inquiry, it is unnecessary to supplement the record to determine the routine practices of title searchers in examining real estate tax records (which, in this case, would show plaintiff's ownership) or in examining divorce decrees and separation agreements referred to therein (which would also disclose, in this case, plaintiff's ownership of the South Orange real estate. It is also unnecessary to determine the extent, if any, that these practices, which go to matters outside the chain of title, would bear upon the question whether, under the circumstances of this case, there would be a duty of inquiry which would prevent a bona fide purchaser from prevailing over plaintiff. *Cf. Palamarg Realty Company v. Rehac*, 80 N.J. 446, 460, 404 A.2d 21 (1979).

Under New Jersey law, therefore, no bona fide purchaser could have perfected an interest as against plaintiff's interest. The trustee is not entitled, under § 544(a)(3), to avoid the transfer to her. Plaintiff is entitled to the entire proceeds of the sale of the South Orange real estate. Therefore, the judgment of the Bankruptcy Court will be reversed and the case remanded for entry of an order in conformity with this opinion.