**In re William Kenneth ELROD, Debtor.**

**Bankruptcy No. 3–83–01946.**

United States Bankruptcy Court,
D. Tennessee.

Aug. 15, 1984.

John H. Fowler, Knoxville, Tenn., for debtor.

Thomas D. Trevathan, Knoxville, Tenn., for movant.

John D. Kreis, trustee.

## MEMORANDUM AND ORDER ON MOTION OF KAREN LEE WEATHERLY ELROD FOR RELIEF FROM AUTOMATIC STAY

CLIVE W. BARE, Bankruptcy Judge.

At issue is the effect of a state court injunction, attachment and order pertaining to a real estate investment account held in the debtor's name. In divorce-related proceedings the state court enjoined the debtor from transferring funds from the account, attached the account and its proceeds, and ordered that funds from the account be applied on a monthly basis to satisfy the debtor's child support obligations as they came due.

The question is whether the effect of the injunction, attachment, and order was to give the debtor's wife and child simply a lien that is void under 11 U.S.C.A. § 506(d)(1979) as securing a claim that is not an allowed secured claim, or whether the cumulative effect of the injunction, attachment, and order was to give the debtor's wife and child an equitable interest in the property that would be excluded from the debtor's estate under 11 U.S.C.A. § 541(d)(1979).

I

On December 10, 1982, the Fifth Circuit Court for Davidson County, Tennessee, granted the debtor's wife an absolute divorce from the debtor. The court granted custody of the parties' minor child to the debtor's wife and ordered the debtor to make child support payments of $650.00 per month.

On June 2, 1983, the court found the debtor in contempt for failing to pay his May child support. The court enjoined the debtor from selling or otherwise transferring any interest in real property or in any entity, specifically including his interest in any venture associated with J.C. Bradford & Co. and J.C. Bradford Properties, Inc. The court also issued an attachment against the debtor's contract rights with J.C. Bradford & Co. and J.C. Bradford Properties, Inc. and against any money owed to the debtor by these entities.

The debtor failed to make the June child support payment. On July 11, 1983, the court removed the injunction and attachment to the extent necessary to permit payment of the child support arrearages from the J.C. Bradford account. In addition, the court removed the injunction and attachment prospectively for each month thereafter to permit J.C. Bradford to deliver funds from the account sufficient to satisfy the debtor's child support obligations as they came due. The pertinent paragraph of the court's order provided:

> Said injunction and attachment are removed prospectively for each month hereafter, beginning in July, 1983, to allow J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., to deliver up to $650.00 per month in funds or checks due and payable to defendant on hand at J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., to Robert E. Boston, as attorney for defendant, in the manner and for the purposes described in Paragraph 1 of this Order. Any amounts or checks so paid or delivered are to be applied to defendant's child support obligation for Erin Elrod. If the amount of said funds or checks on hand

during any month is less than $650.00, said amount may be delivered to Robert E. Boston for application to any child support payments then due. If the amount of said funds or checks on hand during any month or months exceeds $650.00, J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., may deliver to said Robert E. Boston an amount in excess of $650.00 equal to any or all child support arrearages. If child support arrearages exist during any month or months, J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., will be notified by said Robert E. Boston of such past due payments and the amount thereof prior to the date of release of any funds or checks. The amount of funds or checks on hand at J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., for any month is to be determined on the 15th day of said month. The arrangement with J.C. Bradford & Company and/or J.C. Bradford Properties, Inc., set out hereinabove does not change defendant's obligation to pay child support in the amount of $650.00 on the 15th day of each month, except to the extent said amount is paid or diminished by any funds or payments received from J.C. Bradford & Company and/or J.C. Bradford Properties, Inc.

The debtor filed his petition for chapter 7 relief on December 16, 1983. On April 23, 1984, the debtor's wife filed a motion for relief from the automatic stay in regard to the funds in the J.C. Bradford account.

## II

The critical inquiry here is the nature and extent of the movant's property interest in the investment account as a result of the state court's injunction, attachment, and order.

The Bankruptcy Code provides that the debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (1979). However, § 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C.A. § 541(d) (1979).

This section makes clear that "an interest that is limited in the hands of the debtor is equally limited in the hands of the estate." 4 *Collier on Bankruptcy* ¶ 541.24 at 104 (15th ed. 1984). However, it is essential to recall that this section must be read in conjunction with the remaining sections of the Bankruptcy Code. It cannot be used to evade the application of those sections of the Code that bring into the debtor's estate property that is the subject of void or avoidable transactions. Clearly, "§ 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6323–24.

Thus, a party may not invoke § 541(d) to contend that the debtor's estate does not include a property interest that would otherwise be brought into the estate as a result of other applicable Code sections rendering a transaction void or avoidable. For example, in *Elin v. Busche*, 20 B.R. 1012 (D. N.J. 1982), *aff'd*, 707 F.2d 1400 (1983), the plaintiff had argued that the debtor held under a constructive trust in favor of the plaintiff real estate that the debtor had defectively deeded to the plaintiff. The plaintiff sought to evade the trustee's avoidance powers under 11 U.S.C.A. § 544(a)(3) (1979) by asserting that the debtor's estate did not include the property held under constructive trust. The court rejected such an "attempted end-run," *Elin*, 20 B.R. at 1017, around the avoidance provisions of § 544(a)(3), observing:

The fallacy of plaintiff's position lies in a misreading of § 541. Three sections of the Act must be read together—§ 541, § 551 and § 544. Granted that the bare language of these sections may appear to be elliptical, the meaning which emerges is that assets recoverable by a trustee pursuant to § 544 become property of the estate notwithstanding the provisions of § 541(d). In other words, if a person other than the debtor holds an equitable interest in assets subject to recovery under § 544, the provisions of § 541(d) upon which plaintiff relies do not prevent the trustee from recovering those assets.

*Elin,* 20 B.R. at 1016.

Thus, though the court acknowledged that "were the debtor not in bankruptcy he would be deemed to hold his interest in the property subject to a constructive trust," *Elin,* 20 B.R. at 1015, the transfer of the property to the plaintiff was nonetheless subject to being tested under the avoidance provisions of § 544(a)(3).[1] *See also Cubbler v. Cubbler,* 17 B.R. 674, 676 (Bankr.E.D.Penn.1982) ("Section 541(a) and (d) make it clear that the estate is comprised only of the interest in property which the debtor held and is subject to whatever interests third parties may have in that property unless those interests are otherwise avoidable by the trustee or debtor pursuant to the Code.")

Similarly, in the instant case in order to determine whether the movant holds an interest excluded from the estate under § 541(d), this court must ascertain that the interest is not subject to being brought into the estate under § 506(d). Specifically, the question is whether the movant's interest amounts to a lien that would be void under § 506(d) as securing a claim that is not an allowed secured claim. This section provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
>
> > (1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title . . . .

11 U.S.C.A. § 506(d)(1) (1979).[2]

Section 502 of the Bankruptcy Code governs the determination of the allowance of claims. This section provides:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.
>
> (b) . . . [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > . . . . .
> >
> > (6) the claim is for a debt that is unmatured on the date of the filing of the petition, and that is excepted from discharge under section 523(a)(5) of this title . . . .

11 U.S.C.A. § 502(a), (b)(6) (1979).

Section 523(a)(5) of the Bankruptcy Code excepts child support payments from discharge.[3] Thus, the movant's claim for

---

**1.** Upon applying § 544(a)(3), however, the court found that under the applicable state law no bona fide purchaser would have prevailed over the plaintiff, and thus the trustee could not avoid the transfer to the plaintiff.

**2.** The movant indeed filed a proof of claim for $97,067.03 in child support, including the entire amount of the debtor's child support obligations coming due between the filing of the debtor's petition and the child's attainment of majority in 1997.

**3.** This section provides:
(a) A discharge . . . does not discharge an individual debtor from any debt—

. . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . . .
11 U.S.C.A. § 523(a)(5) (1979).

child support payments unmatured on the date of the debtor's petition in bankruptcy, if objected· to,[4] would clearly not be an allowed claim under § 502(b)(6). If, then, the effect of the state court's injunction, attachment, and order was to simply give the movant a lien securing postpetition support payments, that lien would be void under § 506(d).[5]

■ However, the cumulative effect of the state court's actions regarding the J.C. Bradford account was to give the movant an interest far surpassing a mere lien on the property. Admittedly, it is said that attachment is "[a] remedy ancillary to an action by which plaintiff is enabled to acquire a lien upon property or effects of defendant for satisfaction of judgment which plaintiff may obtain." *Black's Law Dictionary* 161 (4th ed. 1951). The Tennessee courts have stated that the levy of an attachment operates to create a lien on property. *Herman v. Katz,* 101 Tenn. 118, 47 S.W. 86 (Tenn.1897); *Snell v. Allen,* 31 Tenn. 208 (1851); *Green v. Shaver,* 22 Tenn. 139 (1842). The point of these cases is essentially that attachment alone does not divest legal title to property—it merely affords a means to compel the debtor's appearance and to provide security for the creditor. These cases further make clear that the property attached cannot be sold until after a final judgment is rendered against the debtor.[6]

In the instant case, however, the state court did much more than simply attach the property as a means of security pending the opportunity to render a final judgment. Here the court had already rendered a

binding and final divorce decree directing the payment of child support by the debtor. In view of the debtor's failure or refusal to make the payments, the court attached the property in question. In addition, the court decreed that the debtor's child support obligations henceforth be satisfied from the J.C. Bradford account. The court decreed this mode of payment in lieu of voluntary compliance on the debtor's part. Certainly it was not envisioned that the debtor's wife would come into court and seek a judgment each month for the arrearage to be satisfied from the property attached. The court enjoined the use of the funds for any purpose other than the payment scheme directed. This was more than simply an attachment as a means of security pending a final decree. This was, indeed, a final, binding, and permanent disposition of the property. Nothing remained to be done.

■ The essence of this transaction was that of an express trust created by the state court to provide for payment of child support. An express trust may be affirmatively created and declared by a court. H. Gibson and W. Inman, *Gibson's Suits in Chancery* § 379 (6th ed. 1982). Under Tennessee law the state court had the power to divest ownership of all or any portion of the J.C. Bradford account in connection with the child support decree. The applicable statute provides:

(2) Courts having jurisdiction of the subject-matter and of the parties are hereby expressly authorized to provide for the future support of the complainant and of the children, in proper cases, by fixing some definite amount or amounts

---

4. No party in interest has filed an objection per se to the movant's proof of claim. However, the trustee in bankruptcy has filed an adversary proceeding (No. 3–84–0252) to determine the validity, priority and extent of the movant's lien. This court holds in a separate opinion entered this date in *Stair v. Shumate,* 42 B.R. 462 (Bankr.E.D.Tenn.1984), that such a complaint to determine the validity, priority, and extent of a lien is a form of request for disallowance of a claim tantamount to the filing of an objection to the claim, at least for purposes of § 506(d).

5. In *Stair v. Shumate,* this court found a court-imposed lien on real estate securing postpetition alimony payments to be void under § 506(d) as constituting a lien securing a claim that was not an allowed secured claim.

6. In this connection, where an attachment is sued out upon a debt not due, Tenn. Code Ann. § 29–6–104 (1980) provides:
No final judgment or decree shall be rendered upon attachment ... until the debt or demand upon which it is based becomes due; nor shall any property levied upon thereby be sold, until final judgment or decree ....

to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced by any appropriate process of the court having jurisdiction thereof, including levy of execution.

Tenn. Code Ann. § 36–5–101 (1984).

Additionally, the statutory law provides:

In such case, the court may decree to the spouse who is entitled to such alimony or child support *such part* of the other spouse's real and personal estate as it may think proper. In doing so, the court may have reference and look to the property which either spouse received by the other at the time of the marriage, or afterwards, as well as to the separate property secured to either by marriage contract or otherwise.

Tenn. Code Ann. § 36–5–102 (1984) (emphasis supplied).

Under this statute the state court plainly had authority to award all or any part of the account to the movant. Clearly inherent in the authority to divest the entire ownership interest would also be the power to divest and award the beneficial interest therein.

■ Courts have often inferred the power to establish a trust to ensure alimony or child support payments from statutes giving a divorce court broad authority to make disposition of property before it. Annot., 3 A.L.R. 3d 1170, 1178 (1965). As long as the requisite elements appear, no formal or technical expressions are required to establish a trust. G.G. Bogert and G.T. Bogert, *Law of Trusts* 23 (5th ed. 1973). It is not essential that the settlor use the term "trust." *Id.* An express trust involves three essential elements:

(1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust

property, which is held by the trustee for the beneficiary.

Restatement (Second) of Trusts § 2 comment h. (1959). These elements are clearly delineated in the instant case. It is said:

Subject to general rules as to the essentials of an express trust, where a person has or accepts possession of personal property, with the express or implied understanding that he is not to hold it as his own absolute property, but is to hold and apply it for certain specified purposes or for the benefit of certain specified persons, a valid and enforceable express trust exists.

89 C.J.S. *Trusts* § 55 (1955).

Additional factors critical to the creation of a trust include the manifestation of an intention to create a trust, the present and unequivocal disposition of the property, the separation of the legal title and beneficial interest, and the limitation of the power and discretion of the trustee as to the use of the property. 76 Am.Jur.2d *Trusts* §§ 31–37 (1975).

■ In the instant case there is no vagueness or ambiguity in regard to the essentials of an express trust. The state court had the power of disposition over the property. The court plainly identified the trust res as the J.C. Bradford account. The court manifested its intention that although the debtor was to remain legal owner of the property he was to have no right to receive or use the property for his own purposes. The court made clear that the debtor held the property, and the debtor's attorney received the proceeds therefrom, solely for the purpose of furnishing support to a plainly designated beneficiary, the parties' minor child. The nature, quantity, and even the duration (i.e. the period of minority) of the beneficiary's interest was established. The manner in which the trust was to be performed was set forth in explicit detail. This was an express trust in every way, lacking only the label itself.

■ Thus, the movant's interest is not a lien that would be void under § 506(d).[7]

7. In addition, the movant's interest would not be subject to being avoided by the trustee under

Rather, the movant and the parties' child are the beneficiaries of a judicially-created express trust. The debtor holds legal title without any equitable interest in the property. Consequently, under § 541(d) to the extent that the J.C. Bradford account is subject to the equitable interest of the movant and the parties' child, it does not constitute property of the debtor's estate.[8]

The movant is therefore entitled to the granting of her motion for relief from the automatic stay to permit her to collect and receive payments from the J.C. Bradford account in accordance with the provisions of the state court decree.

IT IS SO ORDERED.

§ 544(a)(1). This section extends to the trustee the rights and powers of a judicial lien creditor obtaining as of the commencement of the bankruptcy case a judicial lien on the debtor's property. At the commencement of the debtor's bankruptcy case the J.C. Bradford account was subject to the state court attachment. Consequently, the property was already in custodia legis and was subject to neither a subsequent attachment nor a subsequent execution. *Massey v. Holmes*, 189 Tenn. 677, 227 S.W.2d 25 (1950); 30 Am.Jur.2d *Executions* § 185 (1967). In *Tappan v. Harrison*, 21 Tenn. 172 (1840) the Tennessee Supreme Court held that the levy of a judicial attachment creates a lien in favor of the attaching creditor that is superior to a subsequently obtained judgment lien. Thus, a judgment lien creditor would not be entitled to prevail over the movant's prior attachment. Nor, therefor, would the trustee in bankruptcy be entitled to prevail under § 544(a)(1).

8. This is not to say, of course, that the debtor would have no interest in the property once the trust terminated by reason of either the attainment of majority or the death of the child. The debtor's estate would, of course, continue to hold whatever reversionary rights the debtor would have in this regard.