In re MILL CONCEPTS CORP., Atlantic Realty Trust, John Fordham, et al., Debtors.

Bankruptcy Nos. 89–40990 thru 89–41005.

United States Bankruptcy Court, D. Massachusetts.

Feb. 8, 1991.

Mark N. Polebaum, Hale and Dorr, Boston, Mass., for debtors.

Melvin S. Hoffman, Cherwin & Glickman, Boston, Mass., for Federal Deposit Ins. Corp.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Atlantic Realty Trust ("Atlantic"), one of the affiliated chapter 11 debtors in these administratively consolidated proceedings, moves for authority to disburse to itself the balance of proceeds from the sale of real estate located at Lot 62, Hayward Glen, Millbury, Massachusetts. Federal Deposit Insurance Corporation ("FDIC") objects on the ground that Atlantic's ownership is subject to avoidance because the property had been conveyed to a predecessor in title in fraud of creditors. Atlantic responds that as debtor in possession it acts for the benefit of all its creditors, and in that capacity it has the superior rights of a hypothetical bona fide purchaser of property, pursuant to § 544(a)(3) of the Bankruptcy Code, 11 U.S.C. § 544(a)(3) (1988). Two principles designed for the benefit of creditors thus find themselves on a collision course.

## I. FACTS AND PRIOR PROCEEDINGS

Atlantic has sold the property for a net adjusted sales price of $151,243.09. It proposes to pay to the mortgagee, Comfed Savings Bank, the balance of the mortgage debt, to pay $10,000 to counsel for the unsecured creditors' committee, and to pay the balance of the sales proceeds to itself. FDIC has no objection to payment of the mortgage debt.

I have previously allowed FDIC's motion for authorization to bring a fraudulent transfer action concerning the property. Because of the potentially dispositive nature of the § 544(a)(3) question, however, I ordered Atlantic to file the present motion first so that the § 544(a)(3) issue could be resolved in this simpler context.

The allegations contained in FDIC's proposed complaint, which for present purposes are to be considered true, disclose the following: Heritage Park Realty Trust ("Heritage"), which is not a debtor here, is a previous owner of the property. It owed Milford Savings Bank over $4,000,000. On April 10, 1989, Milford Savings Bank commenced an action to foreclose a mortgage covering other property. By deed dated May 2, 1989, Heritage conveyed the property which is the subject of the present motion to John Fordham ("Fordham"), who is also a debtor here, for "[l]ess than one hundred dollars." By deed dated June 15, 1989, Fordham conveyed the property to Atlantic "for $1.00 consideration." As the liquidating agent of Milford Savings Bank, FDIC seeks an order requiring that the net proceeds over the mortgage debt be paid to Heritage on the ground that the transfer from Heritage to Fordham was a fraudulent conveyance under the Uniform Fraudulent Conveyance Act, enacted in Massachusetts as chapter 109A of the Massachusetts General Laws.

## II. GOVERNING STATUTES

It is not enough for FDIC to have the initial transfer from Heritage to Fordham declared fraudulent. Under the Massachusetts enactment of the Uniform Fraudulent Conveyance Act, FDIC is unable to obtain the property or its proceeds if title is in a "purchaser for fair consideration without knowledge of the fraud at the time of the

purchase, or one who has derived title immediately or mediately from such a purchaser." [1]

Section 544(a) of the Bankruptcy Code provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits

such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (1988).

Both Atlantic and Fordham are of course armed under § 1107(a) [2] with the powers of a trustee.

## III. THE REQUIREMENT IN SECTION 544(a)(3) FOR A TRANSFER BY THE DEBTOR

The so-called "strong-arm clause" of the Bankruptcy Act of 1898 gave to the trustee only the rights of a hypothetical judicial lien or judgment creditor.[3] The nature of the trustee's status as a hypothetical bona fide purchaser of real property under the present Bankruptcy Code therefore requires independent analysis which can only derive general guidance from decisions under the prior Act. Atlantic relies solely upon its status as a bona fide purchaser. In view of the wording of the Massachusetts statute, it bases no argument upon its status as a judicial lien or judgment creditor who extends credit and obtains his lien at the commencement of the case.[4]

---

**1.** MASS.ANN.LAWS ch. 109A, § 9 (Law. Co-op. 1985) provides in full:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser-
(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
(b) Disregard the conveyance and attach or levy execution upon the property conveyed.
(2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation may retain the property or obligation as security for repayment.

**2.** 11 U.S.C. § 1107(a) (1988) provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions

and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

**3.** Section 70(c) of the Bankruptcy Act of 1898 as amended, 11 U.S.C. § 110(c) (repealed 1978), provided in part:

The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. ·

**4.** Section 70(c) of the prior Act did not specify that the hypothetical credit extension occurred at the time of commencement of the case. This change was made in order to overrule *Pacific*

FDIC makes no allegation that Atlantic or Fordham conveyed the property in fraud of creditors, only that neither has the status of a purchaser for fair consideration without notice under the Massachusetts statute. The transfer which FDIC alleges was fraudulent is the conveyance by Heritage, FDIC's debtor, to Fordham. The question therefore presented is whether the rights given to Atlantic or Fordham by § 544(a)(3) include the right that a bona fide purchaser would have to retain the property. I conclude that they do not; § 544(a)(3) grants only the ability to avoid an unperfected transfer made by the debtor. I make this interpretation of the statute for a number of reasons.

### A. *Wording of Section 544(a)(3)*

■ Section 544(a) provides that "[t]he trustee shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation that is incurred by the debtor that is voidable by" the type of creditor or purchaser described in subparagraphs below. It is clear, first of all, that the transfer which is voidable is a transfer *by* the debtor; that can be the only meaning of the phrase "transfer of property of the debtor." It also seems apparent from the wording and placement of commas that the grant of "rights and powers" and the grant of the ability to avoid a transfer are separate grants. What may not be quite so apparent, however, is whether the bona fide purchaser rights granted in subparagraph (3) include more than the right to avoid a transfer made by the debtor.

Unlike subparagraphs (1) and (2), subparagraph (3) speaks in terms of a transfer. It describes the hypothetical bona fide purchaser only in reference to a transfer made by the debtor, in these words: "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected...." The words "such transfer" necessarily have reference to the transfer previously described in the body of § 544(a) in the phrase "may avoid any transfer of property of the debtor ... that is voidable by." Nowhere in subparagraph (3) is there any indication of a grant of power beyond the ability to avoid transfers of property made by the debtor.

Atlantic stresses the more general grant of "rights and powers" contained in the first part of the statute, contending that this includes the right and power to retain property, and that those more general rights and powers are given under all three subparagraphs. Atlantic would read the reference in subparagraph (3) to a voidable transfer by the debtor as a reference to a *hypothetical* voidable transfer. It argues, in other words, that it has all the rights and powers of a hypothetical bona fide purchaser who could avoid such a hypothetical transfer.

This makes no sense. The only hypothesis posed in § 544(a)(3) is the existence of a bona fide purchaser against whom a transfer could be perfected. This is emphasized by the phrase "whether or not such a purchaser exists." No purpose is served in giving the trustee the power to avoid hypothetical transfers. As discussed below, the genesis of the strong-arm clause was the trustee's initial inability to avoid actual transfers which although unperfected were valid against the debtor. Moreover, how does one avoid a hypothetical transfer? The construction contended for by Atlantic would be incomprehensible even if the ear-

Finance Corp. v. Edwards, 304 F.2d 224 (9th Cir.1962), and *In re Federals, Inc.*, 553 F.2d 509 (6th Cir.1977). 124 Cong.Rec. H 11,097 (Sept. 28, 1978); S. 17,413 (Oct. 6, 1978). *In Pacific Finance*, a conditional sales contract had not been recorded within the time required by state law, but the court ruled against the trustee's claim under the strong-arm clause because no creditor of the bankruptcy estate had extended credit after the conditional sales transaction. In *Federals*, the court held that the trustee's lien creditor status was insufficient to give him pri-

ority over a seller seeking to reclaim goods under U.C.C. § 2–702 because the trustee's lien creditor status did not necessarily arise after delivery of the goods. Both decisions appear to be misreadings of *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). The *Federals* case has been overruled by § 546(c) of the Code. The extended powers inserted in § 544(a)(1) and (2) have therefore been criticized as unnecessary. *See* L. King & M. Cook, *Creditors' Rights, Debtors' Protection and Bankruptcy*, 856 (1985).

ly portion of § 544(a) joined "rights and powers" with avoidance rights by an "and" rather than an "or." Use of "or" solidifies the existence of the single avoidance function of subparagraph (3). The word is also consistent with the trustee's dual function under either of the prior subparagraphs, which contain no exclusive reference to avoidance. Under subparagraph (1) or (2) the trustee may exercise either or both of avoidance powers or more general powers. § 102(5). H.R.Rep. No. 595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6273. I am therefore unpersuaded by the decisions in *Nat'l Bank v. Erickson (In re Seaway Express Corp.)*, 912 F.2d 1125, 1128, (9th Cir.1990), and *Belisle v. Plunkett*, 877 F.2d 512, 515 (7th Cir.1989) *cert. denied,* —— U.S. ——, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989), both of which interpret the subsection to refer to a hypothetical transfer. Nor do either of these decisions take into account other considerations.

### B. *Purpose of Section 544(a)(3)*

Congress has not graced us with any explanation for the presence of § 544(a)(3). We have only this unrevealing statement: "The third status, that of a bona fide purchaser of real property, is new." H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977), U.S.Code Cong. & Admin.News 1978, p. 6326; S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5871.

For many years, the recording acts governing real property transfers in a number of states have given protection only to bona fide purchasers, so that in these states the holder of an unrecorded mortgage has priority over a judicial lien creditor. *See American Law of Property* (1952) § 17.29. The ineffectiveness of the

trustee's status as a judicial lien or judgment creditor was therefore apparent under the prior Act. It was suggested that the trustee be armed with the powers of a bona fide purchaser of real estate so that he could prevail everywhere over the holder of an unrecorded mortgage. *See, e.g.,* Morris, *Bankruptcy Law Reform: Preferences, Secret Liens and Floating Liens,* 54 Minn.L.Rev. 737, 760, f.n. 61 (1970). There appears to be agreement that this is the background to subsection (a)(3). *See, e.g.,* Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173, 175–76 (1979); L. King & M. Cook, *Creditors' Rights, Debtor's Protection and Bankruptcy,* 856 (1985); Rendleman, *Liquidation Bankruptcy Under the '78 Code,* 21 Wm. & Mary L.Rev. 575, 612 (1980); Jackson, *Avoiding Powers in Bankruptcy,* 36 Stan.L.Rev. 725, 738 (1984). That consensus seems correct. There is no hint of any other purpose, certainly no purpose of changing the settled rights of a trust beneficiary discussed later.

The subsection of course extends to "any transfer of property," not just to security transfers which were its motivation. This was perhaps done in order to be certain that the trustee has priority over mortgagees in so-called "title" mortgage states as well as in "lien" mortgage states. *See 4 American Law of Property,* § 15.14 (1952). Whatever the reason, the statute covers outright transfers as well as security transfers; a number of decisions so hold, testing the validity of the conveyance under state requirements governing deed formalities and recording.[5] Its apparent purpose nevertheless militates against an interpretation which would extend its coverage to circumstances involving no transfer of the debtor's property.

---

**5.** *See, e.g., McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982); *Elin v. Busche (In re Elin),* 20 B.R. 1012 (D.N.J.1982); *Iowa–Missouri Realty Co. v. U.S. Small Bus. Admin. (In re Iowa–Missouri Realty Co.),* 86 B.R. 617 (Bankr.W.D.Mo. 1988); *D & F Petroleum v. Cascade Oil Co. (In re Cascade Oil Co.),* 65 B.R. 35 (Bankr.D.Kan. 1986); *Clark v. Kahn (In re Dlott),* 43 B.R. 789 (Bankr.D.Mass.1983); *Coup v. Great Plains Western Ranch Co. (In re Great Plains Western*

*Ranch Co.),* 38 B.R. 899 (Bankr.C.D.Cal.1984). *See also, McAllester v. Aldridge (In re Anderson),* 30 B.R. 995 (Bankr.M.D.Tenn.1983), where the court was so disturbed by the unjust enrichment caused by the operation of § 544(a)(3) upon the debtor's defective transfer (an improperly acknowledged deed) that it imposed a constructive trust upon the property against the trustee in bankruptcy *after* the avoidance.

## C. Reason for Broader Powers of Subsections (a)(1) and (2)

There is good reason, furthermore, for the broader grant of "rights and powers" exercisable under subsections (a)(1) and (2). Outside of bankruptcy, creditors have rights concerning ostensible ownership of personal property which they do not have with respect to real property. It was therefore unnecessary to give the trustee such rights in subsection (a)(3).

If goods are sold and the seller retains possession, the seller's creditors can in some circumstances acquire rights in the goods superior to those of the buyer. U.C.C. § 2–402; *Lanfear v. Summer*, 17 Mass. 110 (1821). Where goods are consigned for sale to one who deals in goods of that kind, without any public notice of the consignment, creditors of the consignee may obtain priority over the true owner. U.C.C. § 2–326. Under subsections (a)(1) and (2), the trustee acquires the rights which creditors have in these cases. Of course, in many other cases of ostensible ownership, including the trust cases later discussed, creditors can acquire no rights over the true owner.[6]

That the trustee has these same rights is confirmed by decisions under the prior Act. Legislative history tells us that the strong-arm clause was added to the statute in 1910 in order to avoid "the evil of secret liens" which had been perpetuated by *York Manufacturing Co. v. Cassell*, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782 (1906).[7] The Court there held that an unfiled security interest, invalid under state law as to judicial lien creditors, was effective against the trustee in bankruptcy because the trustee was vested with no better title than the debtor. *York Manufacturing Co. v. Cassell* involved a transfer by the debtor. But from the beginning the clause gave the trustee the "right ... and powers" of a judicial lien creditor.[8] It is therefore not surprising that the courts used the clause to defeat the interests of the true owner in situations where the ostensible ownership of another party gave rights to that party's creditors under state law. Indeed, the most quoted pronouncement concerning the strong-arm clause[9] was made in an ostensible ownership case involving motor vehicles on a dealer's lot which were owned by another, where creditors of the dealer could have obtained a lien on the vehicles due to absence of public notice of their true ownership, as required by state statute. By 1950, the trustee's rights in these ostensible ownership cases were so well established that the House report concerning a 1950 amendment to the strong-arm clause contained this statement: "What should be said is that he has the rights of a lien creditor upon property in which the bankrupt has an interest or as to which the bankrupt may be the ostensible owner." H.R.Rep. No. 2320, 82d Cong., 2d Sess. 16 (1952).

No comparable principles have developed with respect to transactions in real estate, where reliance is placed upon the recording system rather than possession, except for the constructive notice accorded a buyer's

---

6. For example, where goods are entrusted to a merchant who deals in goods of that kind, the owner's rights can be lost to a buyer in ordinary course from the merchant but not to the merchant's creditors. U.C.C. § 2–403. In other bailments, not even bona fide purchasers are protected.

7. Act of June 25, 1910, 36 Stat. 838.

8. The original provision, inserted by Act of June 25, 1910, 36 Stat. 838, as § 47(a)(2) of the Bankruptcy Act of 1898, read as follows:

> [S]uch trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the right, remedies, and powers of a

creditor holding a lien by equitable or legal proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.

9. "[T]he petitioner, even though the true owner, cannot prevail in this contest with the trustee in bankruptcy who, by force of law, stands here as the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss.1932).

possession in cases such as *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982). Thus it is perfectly consistent for the trustee to have all the powers of a judicial lien or judgment creditor under subparagraph (a)(1) and (2), and yet have only the more restricted power to avoid transfers of real property under subsection (a)(3).

### D. *Reconciliation of Section 544(a)(3) with Section 541(d) and Section 544(a)(1) and (2)—The Trust Cases*

 FDIC argues that Atlantic holds the net sales proceeds as constructive trustee for FDIC's benefit, and that FDIC's equitable interest is excluded from the bankruptcy estate, free of the trustee's § 544(a) powers, pursuant to § 541(d) of the Bankruptcy Code.[10] A constructive trust is a remedial device employed by the courts to prevent unjust enrichment. 1 G. Palmer, *The Law of Restitution*, §§ 1.3, 1.4 (1978); 5 A. Scott, *The Law of Trusts*, §§ 461, 462 (4th ed. 1989); *Restatement of Restitution § 160 Comment a (1937)*. Transfers induced by fraud, mistake, duress or undue influence, and acquisitions of property through violation of a fiduciary duty, are the principal examples of circumstances giving rise to a constructive trust. *Id.*, §§ 160, 163–69. Principles of unjust enrichment can also impose a constructive trust in the form of an equitable lien. *Id.*, § 161. The beneficiary of a constructive trust has priority over creditors of the title holder, even a creditor who obtains a judicial lien without knowledge of the underlying circumstances. *Id.*, § 173, comment j. Only a bona fide purchaser can cut off the beneficiary's rights in the property. *Id.*, § 172. The same is true where a trustee conveys trust property in breach of trust; only a purchaser for value without notice of the wrong takes the property free of the interest of the trust beneficiaries. *Restatement of Trust (Second) § 284*. This is so

because the bona fide purchaser has a unique place in the law. Unlike the general creditor body, he furnishes fair value in full reliance upon the debtor's title to specific property. G. Glenn, *Fraudulent Conveyances and Preferences*, 406 (1940).

Although constructive trust principles concerning fraud are analogous to those governing FDIC's fraudulent transfer claim, FDIC's rights are not, strictly speaking, those of a constructive trust beneficiary. There is no occasion for application of general principles of unjust enrichment in determining rights in the property transferred; the Uniform Fraudulent Conveyance Act is specifically designed for this cause of action. FDIC's rights concerning the property itself must therefore rise or fall under that statute. Nevertheless, the statute does not purport to control rights in proceeds of the transferred property, which is the issue now before the court. To this extent I obtain some teaching from constructive trust principles.

Under the prior Act, the beneficiary of an express, resulting or constructive trust had priority over the trustee in bankruptcy despite the trustee's status as hypothetical judicial lien or judgment creditor, just as the trust beneficiary had priority over such creditors outside of bankruptcy. *Collier* gives this explanation:

> For a few years after the amendment of 1910, which first inserted the strong-arm clause in former § 47a(2), counsel whose interests it served occasionally urged that § 47a(2) itself gave the trustee the status of a bona fide, or innocent, purchaser or encumbrancer for value. Since the language of the strong-arm clause is explicitly less extensive, and since such an interpretation would mean that the trustee would not be subject to liabilities such as to return property fraudulently obtained by the bankrupt, or to account for trust funds, the theory

---

**10.** Section 541(d) provides:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to

service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

received short shrift in the courts. The cases are numerous which refuse to allow the trustee to invoke the rights reserved by state law to a bona fide purchaser or encumbrancer for value. [footnotes omitted] J. Moore et al, 4A *Collier on Bankruptcy* para. 70.52[1] (14th ed. 1978).

Sellers who were induced to sell goods shortly before bankruptcy through fraudulent misrepresentation or concealment of the debtor's financial condition were permitted to reclaim the goods. *Jones v. H.M. Hobbi Grocerie Co.*, 246 F. 431 (5th Cir. 1917); *In re Spinks Drug Co.*, 298 F. 307 (N.D.Ga.1924). Other beneficial interests were equally effective. For example, in *In re Jeandros Dye & Print Works, Inc.*, 22 F.Supp. 26 (D.Mass.1938), the court permitted rescission against the trustee on the ground of material mistake, holding that only good faith purchasers for value could defeat such rescission rights under Massachusetts law. In *Automatic Canteen Co. of America v. Warton*, 358 F.2d 587 (2d Cir.1966), whose facts are closer to home, the court gave a creditor's fraudulent transfer claim priority over the trustee's strong-arm powers, declaring a constructive trust in sales proceeds of property which had been transferred from a subsidiary to its parent and sold by the trustee in bankruptcy of the parent.

■ Under § 541(d), property in which the debtor held "only legal title and not an equitable interest, such as a mortgage secured by real property ... becomes property of the estate ... only to the extent of the debtor's legal title to such property." The statute's application extends beyond beneficial interests in real estate mortgages; it applies to equitable interests generally, including trust interests. *Begier v. I.R.S.*, —— U.S. ——, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, fn. 10, 103 S.Ct. 2309, 2314, fn. 10, 76 L.Ed.2d 515 (1983). Its application to beneficial trust interests is confirmed by the House and Senate reports, both of which state:

> Situations occasionally arise when property ostensibly belonging to the debtor will actually not be the property

of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, p. 6324. S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin. News 1978, p. 5868.

If under § 544(a)(3) the trustee has the rights of a bona fide purchaser for value with respect to real property which has been transferred to, as well as by, a debtor, the trustee of course prevails over any trust beneficiary under general principles. But this flies in the face of the wording of § 541(d), as well as its legislative and judicial history. Some courts have sought to reconcile the conflict by reasoning that § 541(d) has no application to interests that become part of the estate under § 541(a)(3), the subsection which gathers into the estate property obtained through exercise of the trustee's § 544(a) powers. *E.g., Elin v. Busche (In re Elin)*, 20 B.R. 1012 (D.N.J. 1982). Section 541(d) and its history nevertheless express a clear intent to keep beneficial interests in express and constructive trusts out of the bankruptcy estate under any theory. Surely Congress must be held to have realized that a bona fide purchaser for value cuts off such interests. It makes no sense for such concern to be shown for preserving these interests under one subsection of § 541 if they would be readily included under another subsection. The two subsections would then be strangers to each other, like ships passing in the night. A literal interpretation of § 544(a)(3) so as to apply the statute only to transfers *by* the debtor brings harmony among §§ 541(d), 541(a)(3) and 544(a)(3) in their application to trusts.

The exclusion of beneficial interests under § 541(d), free of the trustee's § 544(a)(3) powers, is not affected by the

reference in § 541(d) to § 541(a)(1) and (2), which was inserted by technical changes made in the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353, § 456, 98 Stat. 363, 376 (1984)). Section 541(d) is concerned with limited legal interests held by the debtor "as of the commencement of the case," not with property later obtained by the trustee under § 544 or the other sections dealing with avoiding powers. Section (a)(1) and (2) are the only other subsections which bring into the estate property interests held by the debtor" as of the commencement of the case." They are therefore the only subsections that could possibly be construed to sweep beneficial interests held by others into the estate, the result that § 541(d) is designed to avoid.

It is occasionally suggested that no conflict exists among these subsections in constructive trust cases because rather than owning an interest in property a constructive trust beneficiary is merely a creditor whose claim should not be preferred over the general creditor body. *See, e.g., Chbat v. Tleel (In re Tleel)*, 876 F.2d 769, 771 (9th Cir.1989). The constructive trust beneficiary is different from the beneficiary of an express trust in that his interest in specific property exists only when a court declares its existence in order to prevent unjust enrichment. His equities are nevertheless sufficiently compelling to entitle him to the property. And, as has been seen, Congress regarded his equitable rights as a property interest which is excludible from the bankruptcy estate. There is therefore no reason to conclude that the event of bankruptcy vitiates a claim of unjust enrichment.[11] The conflict between the two sections, moreover, extends to express trusts where the presence of a beneficial property interest cannot be denied.

Reading subsection (a)(3) to cover only transfers made by the debtor also brings it into harmony with subsections (a)(1) and (2) in cases involving trusts. As discussed above, the equitable interests of a trust beneficiary generally have priority of the rights of a creditor who obtains a lien upon the property. If the property is personal property, so that only the trustee's powers under subsection (a)(1) and (2) are involved, the constructive trust beneficiary therefore has priority over the trustee in bankruptcy. *E.g., N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re Garrott & Sons, Inc.)*, 772 F.2d 462 (8th Cir.1985) (constructive trust imposed for benefit of mortgagee in escrow fund needed to pay mortgage); *City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.)*, 828 F.2d 699 (11th Cir.1987) (constructive trust imposed upon business inventory in favor of bank defrauded of funds used to purchase inventory); *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009 (5th Cir.1985) (priority of constructive trust beneficiary's interest in personalty affirmed in principle, with court concluding that no constructive trust of airplane arose under particular circumstances); *Shipley Co. Inc. v. Darr (In re Tap, Inc.)*, 52 B.R. 271 (Bankr.D.Mass.1985) (funds impressed with express and resulting trust for benefit of customer's payroll held not part of estate). *Cf. Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983) (constructive trust in receivable of debtor deemed sufficient in theory to keep receivable out of estate, but constructive trust denied on particular facts).

Where real estate is involved, however, the trust beneficiary has had to contend with the bankruptcy trustee's asserted rights as a bona fide purchaser for value. Here, he usually loses to the trustee. *E.g., In re Seaway Express Corp.*, 912 F.2d 1125 (9th Cir.1990) (asserted equitable lien on realty acquired in exchange for credi-

---

**11.** Professor Sherwin believes that the constructive trust question should be treated as a remedial issue independent of § 544, and that the court should determine the constructive trust claimant's rights under principles of unjust enrichment applied in the bankruptcy context, with emphasis placed upon the nature of the other claims. She would require that three elements be present in order for a constructive trust to be declared in bankruptcy: (1) unjust gain to the estate combined with loss to the claimant, (2) presence of that gain among the assets to be distributed, and (3) the constructive trust claimant being an involuntary creditor. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 U.Ill.L.Rev. 297.

tor's collateral denied in light of trustee's § 544(a)(3) powers); *Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.1989) *cert. denied* — U.S. ——, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989) (trustee as bona fide purchaser prevails over investors for whose benefit debtor acquired long-term leasehold); *Chbat v. Tleel (In re Tleel),* 876 F.2d 769 (9th Cir. 1989) (parties claiming to be partners in real estate venture denied rights in face of trustee's § 544(a)(3) powers). *Contra, Torrez v. Torrez (In re Torrez),* 63 B.R. 751 (9th Cir.B.A.P.1986) (resulting trust in real estate keeps property out of estate). *See also, Claig v. Seymour (In re Crabtree),* 871 F.2d 36 (6th Cir.1989) (court elided conflict between § 544(a)(3) and § 541(d) by holding in favor of trustee on basis of Florida statute declaring property held under unrecorded trusts to be owned in fee simple).

There is no basis in logic or fairness for the beneficiary of a trust in personalty to fare better in bankruptcy than the beneficiary of a trust involving real estate. My reading of § 544(a)(3) avoids this dichotomy, so that all three subsections bring about the same results in their application to trusts of all varieties.

### E. Reasons for Trustee's Strong–Arm Powers

The *raison d'etre* of the trustee's strong-arm powers also supports an interpretation of subsection (a)(3) as applying only to avoidance of transfers made by the debtor. As we have seen, these powers have developed in response to the rights obtainable by creditors under state law. Giving to the trustee the status of a hypothetical judicial lien or judgment creditor who can avoid an unperfected security interest has been justified by viewing the matter as a race between the unperfected secured creditor and the general creditor body. Because at any time either the secured creditor through filing or any unsecured creditor through

judicial lien may ensure victory, conferring judicial lien status upon the trustee may be viewed as preserving the status quo.[12] Whatever the rationale for these powers, they were conferred as a reflection of the rights which creditors could acquire under state law; they are unrelated to any rights held by bona fide purchasers. Section 544(a) should be construed with this in mind.

■ Atlantic fares no better under general principles of unjust enrichment. The only creditor who gave value in reliance on Atlantic's title is the mortgagee, Comfed Savings Bank; all agree that this party should be paid in full. In any event, the Uniform Fraudulent Conveyance Act as interpreted in Massachusetts would appear to require payment of such mortgage debt. *U.S. Fid. & Guar. Co. v. English Constr. Co.,* 303 Mass. 105, 20 N.E.2d 939 (1939). Atlantic's other creditors, however, would receive a windfall if Atlantic were allowed to retain these sales proceeds. FDIC and the other creditors of Heritage, on the other hand, suffered a loss when Heritage conveyed the property for less than fair consideration. There are therefore no equities related to the rights of Atlantic's creditors which would justify keeping the property in Atlantic's bankruptcy estate. To the contrary, such retention would frustrate principles designed to protect the creditors of Heritage.

## IV. EFFECT OF SALE

■ Atlantic's final argument need not detain us long. Atlantic says that FDIC has lost whatever rights it may have had because it failed to object when Atlantic noticed out the sale. The short answer is that one holding property subject to fraudulent transfer avoidance rights is responsible to turn over any sales proceeds remaining in his hands. *Northborough Nat'l Bank v. Risley,* 384 Mass. 348, 424 N.E.2d 522 (1981). Although the Massa-

---

**12.** *See,* Jackson, *Avoiding Powers in Bankruptcy,* 36 Stan.L.Rev. 725, 733–37 (1984). Professor McCoid has replied with the observation that although it is true a creditor could have achieved priority by obtaining a judicial lien prior to bankruptcy, where in fact none did so

the secured creditor had priority prior to the bankruptcy, so that § 544(a) disrupts rather than preserves the status quo. McCoid, *Bankruptcy, The Avoiding Powers, and Unperfected Security Interests,* 59 Am.Bankr.L.J. 175 (1985).

chusetts courts impose this obligation without express reliance upon constructive trust principles, it is certainly consistent with such principles.

## V. SUMMARY

Unless literally read, § 544(a)(3) can be a refuge for rascals and their creditors.[13] The statute gives the trustee only the right to avoid unperfected real estate transfers made by the debtor. This interpretation is true to its purpose as well as its language. It also brings all three subsections of § 544(a) into harmony among themselves and with § 541(d) in their effect upon the beneficial interests of others in property acquired by the debtor. To deny avoidance rights to FDIC would bring a windfall to Atlantic's bankruptcy estate which has no justification related to the rights attainable by its creditors outside of bankruptcy. That nexus is the heart and soul of the strong-arm clause. Indeed, to permit Atlantic to prevail here would deny legitimate creditor rights.

FDIC is therefore entitled to proceed with its fraudulent transfer action against Atlantic free of any § 544(a)(3) defense. A separate order has issued denying Atlantic's motion except for the requested payment to Comfed Savings Bank.

---

**13.** This potential for mischief is reminiscent of the problems caused by the short-lived appearance in the prior Act of a provision stating that a transfer of real or personal property was completed for preference transfer purposes when it was so far perfected that no bona fide purchaser or attaching creditor could acquire superior rights. In *Corn Exchange Nat'l Bank & Trust Co. v. Klauder,* 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943), the Court held that this provision effectively made non-notification account receivable financing a preferential transfer because a subsequent bona fide purchaser giving notice could acquire rights in the accounts superior to those of the assignee-lender. The statute was thereafter amended to eliminate the bona fide purchaser test as to personal property.