In re Michael Lawrence REIDER, Debtor.

Bankruptcy No. 93–10764.

United States Bankruptcy Court, D. Maine.

Dec. 30, 1994.

Gary M. Growe, Chapter 7 Trustee, Bangor, ME.

Laurie A. Dart, Eaton, Peabody, Bradford & Veague, P.A., Bangor, ME, for debtor.

Janice Reider, pro se.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Before the court is the Chapter 7 trustee's objection to Janice Reider's secured proof of claim. For the reasons set forth below, I conclude that Ms. Reider holds rights superior to the estate in one half of a $24,205.11 fund held by the trustee and, therefore, overrule the trustee's objection and order that the funds be disbursed to her at once.[1]

1. The facts are undisputed. This memorandum sets forth the court's conclusions of law in accor-

## Background

### 1. Facts.

Michael and Janice Reider divorced on March 23, 1992. The divorce judgment provided, *inter alia:*

### DIVISION OF REAL AND PERSONAL PROPERTY

The marital residence ... having a fair market value of $65,000 and [ ] subject to a first mortgage to Skowhegan Savings Bank in the amount of $55,000, shall remain in the names of both the Plaintiff [Janice] and the Defendant [Michael], but [Janice] shall have the right to exclusively possess and reside at said residence for five years from the date of this judgment rent free. *Thereafter, said residence shall be sold and the net proceeds shall be split equally between [Janice] and [Michael].* In addition, *[Michael] shall* pay the mortgage payment on the marital residence payable to Skowhegan Savings Bank each month, as well as the property taxes and *homeowner's insurance* for said residence, and the costs of any necessary repairs and maintenance *until said residence is sold*....

(Emphasis supplied).

Pursuant to the divorce judgment, Michael Reider obtained insurance, including casualty insurance, for the residence. The policy listed Michael as the sole "insured" and designated Skowhegan Savings Bank as the "loss payee."

On November 22, 1993, Michael filed a voluntary Chapter 7 bankruptcy petition. On December 17, 1993, fire destroyed the residence. A portion of the insurance proceeds was paid to Skowhegan Savings Bank in satisfaction of the mortgage debt, and the balance, amounting to $24,205.11, was remitted to Michael's bankruptcy trustee.

### 2. Procedure.

Janice Reider filed a timely secured proof of claim for $16,500, later reduced to $12,500 (approximating one half the surplus insurance proceeds). The trustee objected to her claim. Appearing *pro se*, Janice argued in response that as co-owner of the residence (and under the terms of divorce judgment), she, rather than Michael's bankruptcy estate, is entitled to one half the surplus proceeds.

## Discussion

### 1. The Nature of Janice's Claim.

█ Janice's claim is not garden variety. Such rights as she holds rest upon a claim of constructive trust. She seeks a determination that although the trustee holds the insurance proceeds, he does so *subject to* her senior rights. She asserts that, although Michael held "legal title" to the insurance policy and its surplus proceeds, he held (and the estate acquired) no "equitable interest" in "her" half of the proceeds.[2]

Before proceeding to analyze whether Janice can establish rights in the proceeds fund under a constructive trust theory, we turn to the question whether such rights can prevail against the trustee.

### 2. Constructive Trusts and the Bankruptcy Estate.

The bankruptcy estate "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case [which includes] [p]roceeds ... of or from property of the estate." § 541(a)(1) and (6). But:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the

---

dance with Fed.R.Bankr.P. 7052, 9014.

Unless otherwise noted, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

**2.** This characterization goes beyond Janice's "bare bones" argument, but develops straightforwardly from the essence of her claim. *Pro se*

pleadings are "entitled to a more lenient construction that [sic] might otherwise be required in litigation in which both parties are represented by counsel." *Barrows v. Bezanson (In re Barrows),* 171 B.R. 455, 459 (Bankr.D.N.H.1994) (citing *Rockwell v. Cape Cod Hospital,* 26 F.3d 254, 260 (1st Cir.1994) and *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951)).

extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

§ 541(d).

■ In this circuit recognition of a constructive trust upon assets ostensibly the debtor's provides the beneficiary rights superior to those of the bankruptcy estate.

> When a debtor is in possession of property impressed by a trust—express or constructive—the bankrupt estate holds the property subject to the outstanding interest of the beneficiaries. *American Service Co. v. Henderson,* 120 F.2d 525, 531 (4th Cir. 1941); [4 Lawrence King, *Collier on Bankruptcy* ¶ 541.13 at 541–76 (15th ed. 1994) [hereinafter *"Collier"*]]. In order to establish such a right as trust beneficiary, a claimant must ... prove the existence and legal source of a trust relationship [which] is usually a question of state law.

*Connecticut General Life Insurance Co. v. Universal Insurance Co.,* 838 F.2d 612, 618 (1st Cir.1988).[3] *See Pare v. Campopiano (In re Campopiano),* No. 92–11669, 1994 WL 675317, at *3 1994 Bankr. LEXIS 1849, at *9 (Bankr.D.R.I. Nov. 23, 1994); *In re Mill Concepts,* 123 B.R. 938, 944–45 (Bankr. D.Mass.1991).

There is contrary authority, most notably *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443 (6th Cir.1994). In *Omegas* the Sixth Circuit held that, because constructive trusts are remedial, unless such a trust has been judicially declared before bankruptcy, they (and beneficiaries' rights under them) do not trump the estate's interests. 16 F.3d at 1449. The court declared that "[n]owhere in the Bankruptcy Code does it say, 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" *Id.* at 1448. Under *Omegas'* rule, establishing rights under a constructive trust theory after a bankruptcy fil-

ing merely provides the beneficiary with a claim against the estate. *Id.* at 1449. According to *Omegas* "§ 541(d) cannot properly be invoked as an equitable panacea," *id.* at 1453, and, more bluntly, "constructive trusts have no place in bankruptcy." *Id.* at 1452 n. 9.

*Omegas'* holding reflects concern that a debtor's property be ratably distributed among its creditors in accordance with statutory priorities. *Id.* at 1451–53. *See Oxford Organisation, Ltd. v. Peterson (In re Stotler and Co.),* 144 B.R. 385, 387–88 (N.D.Ill.1992) (expressing reluctance to impose constructive trust because it elevates one unsecured claim above others) (dictum); *Neochem Corp. v. Behring International, Inc. (In re Behring International, Inc.),* 61 B.R. 896, 902 (Bankr. N.D.Tex.1986) (same). *See also Almar Communications, Ltd. v. Telesphere Communications, Inc. (In re Telesphere Communications, Inc.),* 167 B.R. 495, 503–04 n. 5 (Bankr. N.D.Ill.1994) (*Omegas* holding reflects concern about ratable distribution).

■ Although I agree that § 541(d) is not *carte blanche* to "do equity" in derogation of explicit distribution rules, *Omegas* goes too far. Properly applied, constructive trust theory does not conflict with the Code's distribution scheme. Section 541(d) establishes that the Code will not ratably distribute among a debtor's creditors property that belongs to third parties. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135–36, 83 S.Ct. 232, 234–35, 9 L.Ed.2d 190 (1962) (law "does not authorize a trustee to distribute other people's property among a bankrupt's creditors.")

■ It's not that constructive trust beneficiaries gain an impermissible priority over other creditors in the distribution of assets. Rather, § 541(d) recognizes that property ostensibly the estate's may in reality be subject to superior rights. In such circumstances

---

**3.** Nonbankruptcy law determines the nature and extent of the debtor's interest in property, for § 541 purposes. *In re Cormier,* 147 B.R. 285, 289 (Bankr.D.Me.1992) (citing *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)); *In re Resare,* 142 B.R. 44, 45 (Bankr.D.R.I.1992), *aff'd sub nom. Resare v. Resare,* 154 B.R. 399 (D.R.I.1993); *Jackson v.*

*Johnson (In re Johnson),* 113 B.R. 514, 515 (Bankr.W.D.Ark.1989). *See Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88, 93 (2d Cir.1989) (constructive trust determined by state law); *In re Rowland,* 140 B.R. 206, 208 (Bankr.S.D.Ohio 1992) (constructive trust not established under state law analysis).

those rights supersede the estate's. *In re Mill Concepts*, 123 B.R. at 944.[4]

If the parties' prebankruptcy relationship entitles Janice to declaration of a constructive trust on one half the surplus insurance proceeds, that fund, to the extent of her interest, is excluded from Michael's bankruptcy estate by § 541(d). *See Connecticut General Life Insurance*, 838 F.2d at 618. *See also In re Howard's Appliance Corp.*, 874 F.2d at 95; *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1013 (5th Cir.1985); *In re Mill Concepts*, 123 B.R. at 944; *Reliance Insurance Co. v. Brown*, 40 B.R. 214, 218 (W.D.Mo.1984) (court decree establishing constructive trust is retroactive in effect).

■■ In other words, the First Circuit follows the majority rule, recognizing that, through imposition of a constructive trust, a beneficiary can establish rights in property superior to those of the estate. Consistent with § 541(d) and with the beneficiary's interests, the property will be excluded from the estate; the beneficiary is not paid through the estate.[5]

■ If Janice is entitled to benefit from a constructive trust on the insurance policy or its proceeds, that trust dates from the divorce judgment. And her equitable interest will be superior to the bankruptcy estate. *Connecticut General*, 838 F.2d at 618; *Mill Concepts*, 123 B.R. at 944.[6]

### 3. Janice's Rights Under Maine Law.

Janice claims superior rights in one half the insurance proceeds: (1) by virtue of her

---

**4.** *In re Mill Concepts* explicates the constructive trust's function as a *remedial device* to prevent unjust enrichment. 123 B.R. at 944 (citing 1 G. Palmer, *The Law of Restitution*, §§ 1.3, 1.4 (1978); 5 A. Scott, *The Law of Trusts*, §§ 461, 462 (4th ed. 1989); *Restatement of Restitution* § 160 *Comment a* (1937)).

"The constructive trust beneficiary is different from the beneficiary of an express trust in that his interest in specific property exists only when a court declares its existence in order to prevent unjust enrichment." *Id.* at 946. But the beneficiary's interests are "sufficiently compelling to entitle him to the property. And, as has been seen [from § 541(d)], Congress regarded his equitable rights as a property interest which is excludible from the bankruptcy estate. There is therefore no reason to conclude that the event of bankruptcy vitiates a claim of unjust enrichment." *Id. See Mitsui Manufacturers Bank v. Unicom Computer Corporation (In re Unicom Computer Corporation)*, 13 F.3d 321, 324 (9th Cir.1994); *In re Columbia Gas Systems Inc.*, 997 F.2d 1039, 1059 (3d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994); *In re Howard's Appliance Corp.*, 874 F.2d at 93; *Rotman Electrical Co., Inc. v. Cullen (In re Vappi & Co., Inc.)*, 145 B.R. 719, 724–25 (Bankr. D.Mass 1992) (§ 541(d) "expresses a clear intent to keep beneficial interests on express and constructive trusts out of the bankruptcy estate"); *Reliance Insurance Co. v. Brown*, 40 B.R. 214, 218 (W.D.Mo.1984) (constructive trust retroactive); *Sommer v. Vermont Real Estate Inv. Trust (In re Vermont Real Estate Inv. Trust)*, 25 B.R. 813, 817 (Bankr.D.Vt.1982). *But see In re Omegas Group, Inc.*, 16 F.3d at 1448–53.

**5.** Section 541(d)'s scope is coextensive with state law principles of constructive trust, including instances where such trusts may be imposed in the absence of fraud or wrongful conduct. To the extent the statutory language is inexplicit on that point, its legislative history is illuminating:

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

H.R.Rep. No. 595, 95th Cong., 1st Sess., at 368 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868, 6324. *See In re Auto–Train Corp.*, 53 B.R. 990, 995–96 (D.D.C.1985), *aff'd*, 810 F.2d 270 (D.C.Cir.1987) (proving wrongful conduct unnecessary where debtor would be unjustly enriched if allowed to retain the property).

**6.** These general principles govern treatment of insurance policies in bankruptcy.

> 'Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself. Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate.'

*In re Goodenow*, 157 B.R. 724, 725 (Bankr.D.Me. 1993) (quoting *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55–56 (5th Cir.1993)). But, in regard to insurance *proceeds* specifically, "[w]hen a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate." *Id. See In re Edgeworth*, 993 F.2d at 55–56 (discussing authorities treating insurance proceeds as property of the estate).

joint ownership of the insured property, and (2) by virtue of the divorce judgment's directive that the property be insured for her benefit.

### a. Rights To Fire Insurance Proceeds As Co–Owner.

There are at least three approaches to a co-owner's claim that he or she is entitled to a share of fire insurance proceeds when not named as an insured or designated as a beneficiary in the policy.

The first approach might be considered the general rule. Some authorities state that "a stranger to the contract cannot collect thereon simply because he was the owner of an undivided interest in the property destroyed [and this is true] even though the insurance was not limited to the policyholder's separate interest." 5A J. Appleman, *Insurance Law and Practice* § 3361 at 188–89 (1969 and 1993 Supp.) [hereinafter *"Appleman"*]. *See Collette v. Long*, 179 Miss. 650, 176 So. 528 (1937).

Some courts recognize exceptions to the general rule case-by-case:

[A]mong relevant inquiries in determining whether insurance proceeds should be shared are: whether insurance was obtained for sole benefit of person who procured it; whether by express or implied agreement person who took out insurance did so for benefit of owners of other interests in property, and whether owners of other interests contributed to cost of insurance.

5A *Appleman* § 3361 at n. 6 (Supp.1993) (citing *Summerlin v. Bowden*, 353 So.2d 1175 (Ala.Civ.App.1978)).

And some go even further: "[P]roceeds have been considered, by some courts, to stand in place of the property destroyed, so that where partition is sought after the loss, the co-owners are entitled to share therein." 5A *Appleman* § 3361 at 190 (citing *Price v. Price*, 394 S.W.2d 855 (Tex.1965)).

■■■■ Presently, Maine law follows the general rule, holding that "a policy of insurance is purely a personal contract between the insurer and the assured," and rights to insurance proceeds do not emanate from rights in the property insured. *Hanson v. W.L. Blake & Co.*, 155 F. 342, 359 (D.Me. 1907); *Quigley v. Caron*, 247 A.2d 94, 95–96 (Me.1968). *Accord Hopkins Illinois Elevator Co. v. Pentell (In re Pentell)*, 777 F.2d 1281, 1284 (7th Cir.1985); *In re Balsier*, 215 F. 134, 135 (W.D.Pa.1914). *See generally* Robert E. Keeton, *Insurance Law* §§ 3.1(d)(2) and 4.6 (1988); 4 *Collier*, at ¶ 541.12; 4 *Appleman* § 2105. It follows that "[f]ire policies are not contracts in rem, but are personal contracts providing indemnity for loss[, nor do they] run with the property when transferred." 4 *Appleman* § 2105 at 12–13 (emphasis supplied).[7]

Concededly, Maine's highest court has not recently considered the exceptions to the general rule reflected in the second two approaches. But I need not reach that question today. Here there are more compelling circumstances, not limited to her property ownership, warranting recognition of Janice's rights in the insurance proceeds.

### b. Constructive Trust Based on Divorce Judgment.

■■■ In a few circumstances, Maine courts have recognized that a stranger to an insurance contract may impress a trust upon insurance proceeds. The terms of the Reiders' divorce judgment present such a circumstance.

■■■■ Generally, Maine law provides that "[a] constructive trust may be imposed when a party holding legal title to property stands in a fiduciary relation to another, resulting in an 'equitable duty to convey [the property] on the ground that he would be unjustly enriched if he were permitted to retain it.'" *Thomas v. Fales*, 577 A.2d 1181, 1183 (Me.1990) (citation omitted). *See Hamm v. Hamm*, 584 A.2d 59 (Me.1990); *Gaulin v. Jones*, 481 A.2d 166 (Me.1984); *Chandler v. Dubey*, 378 A.2d 1096 (Me.1977); *Ruebsamen v. Maddocks*, 340 A.2d 31 (Me. 1975). "A person can be found to stand in a fiduciary relation to another 'when he has

---

7. To be clear, as a co-owner and potential recipient of proceeds on sale, Janice Reider held an *insurable* interest in the residence. 4 *Appleman* § 2123 at 35. Looking only to the insurance contract, however, Janice's interest was not "insured." *See* 5A *Appleman* § 3331.

rights and duties that he is bound to exercise for the benefit of [another] person.' " *Thomas*, 577 A.2d at 1183 (quoting *Wood v. White*, 123 Me. 139, 143, 122 A. 177 (1923). Constructive trusts are most often imposed where a fiduciary is guilty of wrongdoing. *See Gaulin*, 481 A.2d at 168–69; *Ruebsamen*, 340 A.2d at 37–38; *Chandler v. Dubey*, 325 A.2d 6, 8–9 (Me.1974).

▮ But fiduciary relations and wrongdoing are not essential elements. A claimant may prevail on a constructive trust theory where there would otherwise be demonstrable unjust enrichment.

> Although affirmative wrongdoing such as fraud or deceit may give rise to a constructive trust, a trust may also be imposed based on mistake or other circumstances not involving wrongdoing. Similarly, though a breach of fiduciary duty . . . may justify imposing a constructive trust, it is not a prerequisitê; many constructive trusts do not arise out of pre-existing fiduciary relationships. Constructive trusts stem from an almost unlimited variety of circumstances having in common the need to avoid unjust enrichment.

A. Horton and P. McGehee, *Maine Civil Remedies* § 9.6 at 9–4.

▮ Because we consider Janice's claim to half the surplus insurance proceeds in light of the provisions of the divorce judgment, she must rely on its terms to support her position. It directs that the house be sold in five years, with the proceeds divided equally between Janice and Michael. Until the sale, Michael was to keep the property insured.

The judgment does not specify that insurance was to be maintained for the benefit of both owners. But that does not mean that the insurance requirement was exclusively for Michael's benefit. Given that a *voluntary* liquidation of the couple's equity in the residence was to benefit each of them equally, an *involuntary* liquidation, leading to recovery of insurance proceeds, should not alter the result. However, the judgment does not address the point expressly.

▮ But, as would be the case were we considering the intention of parties in a consensual relationship, when considering the propriety of declaring a constructive trust, an express directive to undertake action for another's benefit is not necessary where "such intention arises by a *necessary implication* from the terms of the agreement construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances." *Hanson*, 155 F. at 358 (quoting *Walker v. Brown*, 165 U.S. 654, 664, 17 S.Ct. 453, 457, 41 L.Ed. 865 (1897)) (emphasis supplied). *Accord Harmon v. Harmon*, 617 So.2d 1373 (La.1993). *Hanson*'s teaching is equally applicable here.[8]

From the judgment's express terms one may readily infer that if there was a liquidation of the residence's value (through realization of fire insurance proceeds) upon a final disposition of the property (destruction, rather than sale), the court intended that Janice Reider receive her share. Specifically, the judgment, while providing for an even split of sale proceeds, requires that Michael maintain insurance on the residence "until said residence is sold." And the insurance term is set forth along with other provisions (making the mortgage payment, paying the taxes) aimed at preserving the property's equity until sale.

General rules governing construction of divorce judgments support the inference Jan-

---

8. In *Hanson*, the mortgagee agreed to lend money to the debtor on condition that the debtor would grant a security interest in personal property and obtain insurance for the benefit of the mortgagee. 155 F. 342 (D.Me.1907). The debtor initially named the mortgagee as beneficiary, but later changed the policy to name his wife as sole beneficiary without noticing the mortgagee. Subsequent to this change, a prepetition fire destroyed the collateral. The mortgagee claimed an equitable lien on the proceeds of insurance. The court found for the mortgagee, persuaded in large part that there had been a contract evidencing an intent to insure for its benefit. *Id.* at 357. The court impressed the proceeds with an equitable lien, regardless of whether they were in the hands of the insurance company or the mortgagor. *See In re Mill Concepts*, 123 B.R. at 944 ("Principles of unjust enrichment can also impose a constructive trust in the form of an equitable lien.").

ice urges, as well.[9] *See Fitzgerald v. True-worthy*, 476 A.2d 183, 185 (Me.1984) (Where intent of divorce judgment was to divide proceeds of sale of marital residence, the pre-sale death of ex-husband should not change that result regardless of type of legal title to the premises). Considering the divorce judgment in its entirety, concluding that Michael was to insure the property for his and Janice's mutual benefit is not only a necessary implication, it is the only fair implication to be drawn.[10]

▪ I conclude, therefore, that pursuant to Maine law, one half the insurance proceeds held by the trustee is impressed with a constructive trust in favor of Janice Reider.[11]

The divorce judgment necessarily implies that her interest in the property was to be protected by the insurance and to hold otherwise would unjustly enrich Michael's bankruptcy estate. "[T]he bankruptcy estate holds the [insurance proceeds] subject to the outstanding interest of the beneficiary...." *Connecticut General Life Insurance Co.*, 838 F.2d at 618; *In re Mill Concepts*, 123 B.R. at 946; § 541(d).[12]

### CONCLUSION

For the reasons set forth above, the trustee's objection to the claim of Janice Reider is overruled. A separate order will enter directing the trustee to disburse to Janice

9. "It is the intent of the [divorce] court, not the intent of the parties, that is involved in construing [a] divorce judgment." *Elliot v. Elliot*, 431 A.2d 55, 57 (Me.1981). *See Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983); *Torrey v. Torrey*, 415 A.2d 1092, 1094 (Me.1980). "[T]he meaning of ambiguous language used in a judgment is determined by a consideration of the language in context of the entire judgment...." *Bliss v. Bliss*, 583 A.2d 208, 210 (Me.1990) (construing divorce judgment as to valuation date of pension benefits). *See also MacDonald v. MacDonald*, 582 A.2d 976, 978 (Me.1990) (upholding trial court's clarification of its own judgment which merely articulated "'that which [the court] had found was already included in the judgment by implication'") (quoting *Boothbay Harbor Condominium I v. Whitten*, 387 A.2d 1117, 1120 (Me.1978)).

10. Rules for construction of contracts provide an analogy: *See General Electric Capital Corp. v. Ford Motor Credit Co.*, 149 B.R. 229, 234 (D.Me.1993) ("Intention ... must be gathered from the writing construed with an eye to the subject-matter, the motive and purpose of making the agreement, and the object to be accomplished."); *Benedix v. Boston Old Colony Insurance Co.*, 417 A.2d 453, 455 (Me.1980) ("[A] writing is to be interpreted as a whole."); *Hills v. Gardiner Savings Institution*, 309 A.2d 877, 881 (Me.1973) (court looking to substance and meaning of a transaction, rather than mere form).

11. The Maine Supreme Judicial Court has approved employing constructive trusts to effectuate provisions of domestic relations judgments.
    In *Thomas v. Fales*, a divorce judgment awarded the wife all interest in certain real estate. The husband, who had purchased the property, titled it in his brother's name to avoid suspicion of drug dealing. The trial court impressed the property with a constructive trust, and ordered the brother to convey the property to his former sister-in-law. On appeal, the court explained that "'[w]henever one person is placed in such

relation to another that he becomes interested for him ... in any subject of property ... he is prohibited from acquiring rights in that subject antagonistic to the person with those interests.'" 577 A.2d at 1184 (citation omitted).
    *Ridgway v. Prudential Insurance Co.*, 419 A.2d 1030 (Me.1980), *rev'd on other grounds sub nom. Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) (supremacy clause), upheld a decision impressing life insurance proceeds with a constructive trust in favor of the insured's children where the divorce decree commanded that the insured keep in force the policies for the benefit of the parties' children. *Cf. Chemical Bank v. United States Lines (S.A.), Inc. (In re McLean Industries, Inc.)*, 132 B.R. 271 (Bankr. S.D.N.Y.1991) (constructive trust imposed on insurance proceeds and contract reformed to include a loss payee clause in insurance policy where mortgage evidenced parties' intent).

12. Under state law, the party seeking imposition of a constructive trust bears the burden of proof. *Town of Eustis v. Stratton–Eustis Dev. Corp.*, 516 A.2d 951, 953 (Me.1986); *Chandler*, 378 A.2d at 1098. Some cases apply a clear and convincing evidence standard to prove the existence of a constructive trust based on allegations of fraud. *See Bezanson v. Donoghue (In re Hamilton & Son)*, No. 283–00209, 1990 WL 63071, at *1–2, 1990 Bankr.LEXIS 595, at *4–*5 (Bankr.D.Me. Mar. 16, 1990); *Gaulin*, 481 A.2d at 169; *Sacre v. Sacre*, 143 Me. 80, 94, 55 A.2d 592 (1947). At least one case indicates that a preponderance of the evidence may suffice. *Town of Eustis*, 516 A.2d at 953–94 (affirming decision of trial court that constructive trust not found under either standard, where abuse of fiduciary duty, rather than fraud was claimed). *See Ruebsamen*, 340 A.2d at 34 (existence of confidential relationship as element of constructive trust to be proven by preponderance of evidence). Since the facts are undisputed, the standard of proof is not an issue here.

Reider one half the fire insurance proceeds he holds.